(83 App. Div. 226.)

PEOPLE v. THOMAS.

(Supreme Court, Appellate Division, First Department. May 8, 1903.)

1. LARCENY—DEPOSIT WITH BROKER.

Z. arranged to speculate in stocks and wheat through defendant, a broker, who was not a member of an exchange, but did business through S., who was a member of an exchange. Defendant had Z. make checks for margins payable to S., with whom they were deposited to the credit of defendant. Defendant's account with S. was settled by S. paying defendant. *Held* that, even if defendant had no other customer and no other funds in the account with S., the deposit by Z. was not a special deposit, and so was not the subject of larceny by defendant, under Pen. Code, § 528, as money in his hands as agent, bailee, or trustee.

Appeal from Court of General Sessions, New York County.

George W. Thomas was convicted of grand larceny in the first degree, and appeals. Reversed.

The count of the indictment upon which the defendant was convicted charged him with having feloniously appropriated to his own use on April 20, 1899, while bailee and trustee of Victor Von Zeibel, moneys in his possession belonging to the said Von Zeibel, amounting to $685.32.

At the trial Von Zeibel testified that he was introduced to the defendant as the manager of the firm of J. G. Stewart & Co., and first met him at the office of that company, and on April 14 and 15, 1899, gave him two checks, for $300 and $250, respectively, and told the defendant he "wanted to make business with the firm of Stewart & Co.," and offered to put in his money to speculate, to be used as margins for buying and selling, and the defendant told him W. B. Smith & Co. were brokers through whom Stewart & Co. worked in the Consolidated Exchange, and requested the checks to be made to the order of Smith & Co., to be credited to his account; that the checks were so drawn and deposited, and he gave to the defendant various orders for the purchase and sale of stock of wheat, and received regular reports every day of the transactions, and there was nothing said prior to April 19th as to how the account stood, except that he and the defendant figured profits, and he made the profits to be about $500, and on the 19th asked the defendant for $300, as he wanted to take out the profits as soon as made; that the defendant said there was no objection, and sent a clerk to Smith & Co. with a receipt for $300, and the clerk, on returning, said the books were not yet fixed, and the defendant said it was all right, and that was the regular way, and that the money would come later, as soon as they had fixed up his (Von Zeibel's) account; that, on returning to the office of Stewart & Co. later in the day, he found the defendant gone; that Smith & Co. is a reputable firm, members of the Exchange, and he knew that they had received his checks, but the money was due him from Stewart & Co.; that he went to see the defendant again on the morning of the 20th, and he was not in the office, and Mr. Romer, who was there, showed him a bill of sale of the furniture, dated April 19th, and he did not see the defendant again before he was arrested, but a few days after the 20th found the office unoccupied. On cross-examination the complainant testified that Mr. Wester was not interested with him, and did not speculate with him, but gave him advice, and used his account, and gave Stewart & Co. directions with reference to his speculations; that he told the defendant that he, and not Mr. Wester, was to give directions, and that, when one of the bought and sold notices referred to Mr. Wester, he objected; that he did not know of the bookkeeping of the defendant, and that the account was "Wester & Von Zeibel"; that he had been told that neither the defendant nor the firm of Stewart & Co. were members of any exchange. The witness was shown papers which he identified as "all the orders" he gave the defendant, adding that he received no money in return. On further inquiry he denied withdrawing on April 18th $75, and said that he did not know whether Mr. Wester

had obtained that amount, but the latter had no right to receive it; that he had bought privileges, but he could not tell how often, and, upon looking at papers shown him, recognized only one time he had done so; and he could not remember whether he got a "whole account" from Stewart & Co. or not, but it was not true that only $117.46 was due him. A clerk of Smith & Co. testified that prior to April 14th the defendant had dealt with and through that firm, and several statements had been rendered him, and there was not a new account thereafter, but a continuation of the old one, and it included stock, wheat, and other transactions, and from April 14th to April 20th orders were not marked any other way than previously, but there were entries April 14th, 15th, 17th, and 18th; that the account showed a payment on April 20th of $685.32 by check to Stewart & Co., which was given to defendant's clerk, and came back indorsed by the defendant. This ended the case of the people, and motion was made to direct an acquittal, which was denied.

The defendant then took the stand in his own defense, and testified that he had been a member of the firm of Stewart & Co., which had included himself and J. G. Stewart, and as such firm he was individually carrying on brokerage in the spring of 1899 and down to April 20th; that he was not a member of the Exchange, and his business consisted in getting clients to purchase stocks, the transactions being turned over to a firm on the Exchange; that prior to April 14, 1899, Mr. Wester called and said he wished to handle some wheat, and he told him he intended to leave May 1st, and advised him to handle it himself, but that on the 14th of April Von Zeibel and Wester came in to open an account, and he told them to go to Smith & Co. and deposit the money there, but, as they desired it, he opened an account in their names on his books, and the checks were deposited by them with Smith & Co.; that Wester gave directions as to the purchases, and that subsequently an account was made up as the result of the transactions, showing a balance due them of $117.46, they having previously received $75 in cash; that on the 19th of April Von Zeibel asked for $200 or $300, and the clerk referred to their account, and he told the complainant that he could not pay him, as the account was with Wester; that by the books there was then due them less than was asked for; that he had an account with Smith & Co. from February or March, and it included three or four accounts, and this account with Smith & Co. was closed on April 20th by a check, which he received in settlement from that company and cashed; that on April 19th he disposed of his office business to Mr. Romer, who was to carry on the place, and left moneys with him to pay Von Zeibel and Wester, and thereafter went to Massachusetts, and returned to New York May 1st, and thought everything was settled until the latter part of May. On cross-examination the defendant testified that he sent his clerk around to get the $300 requested, and believed the clerk could not get it that morning, but was not positive; that he was at his office till 1 o'clock the next day, and the day before had conversation with Mr. Wester, but not with Von Zeibel; that the letters shown him bore the heading and stamp of his firm, but were not all his, and he did not receive such orders, and Von Zeibel did not get those letters from him. George A. Romer testified that he purchased the defendant's business, and assumed the payment of certain creditors—whatever the book showed— and was prepared to repay whatever was presented, and the account of Von Zeibel was one of the accounts; that the account of J. Stewart & Co. was continued with Smith & Co.; that Smith & Co. had two accounts, one a running speculative account, and one a commission account, and the latter went directly to Stewart & Co.; that as there were threatening lawsuits, and he found the business unprofitable, he sold out the furniture the following day after the 20th, paying rent up to May 1st, but he would have stayed, had the customers stayed. The complainant's attorney testified that he had never personally demanded of defendant, prior to his arrest, the moneys in question, but went to the office several times, and found it closed; that the defendant's attorney, Mr. Johnson, offered to give defendant's notes as the best that could be done, and the amount claimed was $1,000; that the orders to Smith & Co. were not duplicates of the orders of Von Zeibel, but the defendant had used his own discretion; and part of the claim was based upon negligence

and disobedience of orders. A clerk in the office of Stewart & Co. testified that the account was in the name of Wester & Von Zeibel, and Wester gave directions for transactions made, and some cash was received by them, $75 of which was handed to Wester, and the balance due was $117.46; that on April 19th the defendant gave him a letter—Von Zeibel being then present—to go to Smith & Co. for some money, and the request was refused, as there was only enough money to carry along the margins; that there were open trades by Von Zeibel's orders, and a dozen orders were given by Wester on the account; that Stewart & Co. had half a dozen customers, and Smith & Co. did not know Von Zeibel and Wester in the transactions with defendant; that the account between the two firms included many transactions, some of which made a profit and some a loss, and "the whole thing left $685, according to Smith's statement," for which amount check was given to Stewart & Co.; that "all these transactions belonged to different people * * * for the simple reason that there were two or three accounts carried in that one account kept by Smith & Co."

The jury returned a verdict convicting the defendant of grand larceny in the first degree, "with a recommendation to the mercy of the court." From the judgment of conviction thereupon entered, sentencing the defendant to two years in state's prison, this appeal is taken.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Bartow S. Weeks, for appellant.
Robert C. Taylor, for the People.

O'BRIEN, J. The defendant was indicted and convicted under section 528 of the Penal Code, which provides:

"A person who with intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, * * * having in his possession, custody or control, as bailee, servant, attorney, agent, clerk or trustee or officer of any person, association or corporation or as a public officer or as a person authorized by agreement or by competent authority to hold or take such possession, control or custody, any money, property, evidence of debt or contract, article of value of any nature or thing in action or possession, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof, steals such property and is guilty of larceny."

If the prosecution made out a prima facie case of felonious appropriation of the money of the plaintiff while acting as "bailee, * * * agent, * * * or trustee," we would not be justified in interfering with this verdict, because, if we assume that a favorable inference from the testimony given in support of the defense would lead to a different conclusion, there would be a question for the jury. Leaving out of consideration the evidence given on behalf of defendant, we must take alone that given on behalf of the prosecution, for the purpose of determining whether or not a prima facie case of guilt was established. Taking the story of the complainant, it appears that he wished to speculate in stocks and wheat under the direction of the defendant, who was in business and trading under the name of "J. G. Stewart & Co." Not being a member of an exchange, his business consisted in getting customers, and, when the defendant secured the account of Von Zeibel, he directed him to make the checks, which were intended to be deposited as margins, to the order of W. B. Smith & Co., which was a reputable firm and members of an exchange, and with

whom the defendant, under the title of "J. G. Stewart & Co.," did busi-
ness. Von Zeibel deposited two checks, one for $300, and the other
for $250, with Smith & Co., to the credit of J. G. Stewart & Co. As
against Smith & Co., Von Zeibel had no claim. The checks having
been deposited to the account of Stewart & Co., that firm, or rather
the defendant, who, on the retirement of Stewart, was the firm, had
the control of the moneys in the account with Smith & Co.

The attempt was made to show that this was a special deposit, and
that the money placed with Smith & Co. remained the money of
Von Zeibel; and there was some evidence tending to show that during
the six days this account was running it represented only Von Zeibel's
transactions. We think, however, that the prosecution failed to estab-
lish any agreement or arrangement under which the defendant was to
deposit the money in a special account as the money of Von Zeibel.
On the contrary, we think the evidence shows that the deposit with
Stewart & Co. was just the same, no other or different than if it had
been actually made with the defendant as a broker. We fail to find,
therefore, that the property mentioned in the indictment was received
in a fiduciary capacity or under directions which made it the subject
of embezzlement. The transaction, assuming the evidence of the
prosecution to be true, was that the complainant was to deal with the
defendant's firm as his brokers; and whether the defendant mingled
the funds of Von Zeibel with those of other customers, or, having no
other customers, had merely this money deposited to his credit with
Smith & Co., it does appear that it was in his general, as distinguished
from a special, account, and thus the elements which would be essen-
tial to preserve the ownership of Von Zeibel in the special fund or
money are wanting.

This, we think, becomes clearer if we eliminate Smith & Co., and
assume that the money was actually deposited with the defendant,
and by the defendant placed in his general account in a bank. Or,
assume that the defendant received from Von Zeibel, instead of checks,
cash, and placed it within his money drawer, and while there it was
stolen; would it have been the money of Von Zeibel, or would it have
been money for the loss of which the defendant would have to re-
spond? Or, suppose that he had taken the money to his bank, and
had obtained a certificate of deposit for the amount in his own name,
and while holding it the bank failed; would not the defendant, and not
Von Zeibel, be the loser, assuming that both were financially re-
sponsible?

Quite analogous, we think, is the case of People v. Paine, 35 Misc.
Rep. 763, 72 N. Y. Supp. 3, wherein the court, in discharging the de-
fendant on habeas corpus, said:

"In the present instance the $167 placed in the hands of the defendant by
the complainant made him the debtor of the latter to that amount, and gave
the depositor the right to recover by civil action a return of the deposit, or
to call upon the defendant for an accounting. * * * The complaint fails
to set forth any charge of which a criminal court has jurisdiction, and the
attempt to make a criminal offense of the transaction looks like an effort to
use the criminal courts as the means of enforcing an obligation, the remedies
respecting which belong exclusively to the civil courts established for the
purpose."

And in People v. Howe, 2 Thomp. & C. 383, 387, which was the case of an insurance agent, who had collected from policy holders sums of money, and who was charged with embezzlement for failure to pay a balance due, it was said:

"It has therefore been held, where the party receiving the money has a right to mix it with his own, being accountable for a balance, * * * that an indictment for embezzlement does not lie upon a misappropriation. However morally wrong it may be for a party to use money for his own benefit which he is bound to pay over to another, it is not a criminal offense so long as it is a mere debt, no matter of how sacred a nature."

We have not overlooked the fact, to which our attention has been called, that the scope of section 528 is extremely broad, and that the crime of embezzlement, which, prior to the enactment of the Penal Code, extended merely to agents and servants, has been made to include fraudulent appropriation by bailees and trustees. It was not, however, the intention of the Legislature to change the nature of the transaction itself, and where therefrom it appears that the relation of debtor and creditor exists the crime of larceny or embezzlement cannot arise from a failure of the debtor to pay.

The indictment here charges the larceny of $685.32, which was the exact amount of the check received by the defendant closing the account between Stewart & Co. and Smith & Co. To support the indictment of embezzlement, it was essential for the prosecution to establish that the fund came into the hands of the defendant as the agent, bailee, or trustee of Von Zeibel. We do not think, however, that it can be said that the check for $685.32 was the property of the complainant. It was the balance due from the firm of Smith & Co. to Stewart & Co.; and, were it not for the suggestion that Stewart & Co. had no other customer and had no other funds in that account (which is not made clearly to appear), there would be nothing from which the inference could be drawn that this money was in any sense the property of the complainant. Considering the nature of the transaction between the parties, we fail to discover any relation between them other than the ordinary one that exists between a broker and a customer. Where, as here, money is deposited with a broker for margins, which, when deposited, loses its identity as the money of the depositor, and which it is proper for the broker to place in his general account in a bank or with another broker, to be used the same as he uses his other money employed in his business, the right of the depositor to the specific money is lost, and he cannot claim that the broker has received such money in a fiduciary capacity.

We think that it would be going further than any adjudicated case, and further than any construction extending the scope and purpose of section 528 of the Penal Code should go, to conclude that the facts proven would justify a conviction for larceny. Were it otherwise, then in every case where a customer deposits money with a broker, to be used by him generally in his business, the failure of such broker to return the deposit, together with what might have been realized in the shape of profits upon the speculation, would leave him open to the charge of having embezzled his customer's money. We do not think it was the intention of the Legislature, nor is it the reading of the pro-

visions of the Penal Code, that any such radical departure should be made, so as to change a transaction that has always been regarded as establishing the relation of debtor and creditor into one which would place the broker in the position of a trustee who receives money in a fiduciary capacity, which he is obliged at all times to keep separate and apart from his own moneys, and, on demand, return, upon pain of indictment and conviction for embezzlement.

Our conclusion, therefore, is that this judgment must be reversed, and a new trial ordered. All concur.