## COURT OF APPEALS.

### June 7, 1910.

## THE PEOPLE v. HAROLD G. MEADOWS.

### (199 N. Y. 1.)

(1). LARCENY—EMBEZZLEMENT BY STOCKBROKER—PENAL CODE, SEC. 528, SUB. 2.

Where a broker, directed to buy stock for a customer, bought it on marginal account in the name of his own firm, and deposited a check, which was received from the customer for the specific purpose of paying for the stock and commissions thereon, in the bank account of his firm and drew upon it for individual and firm indebtedness, without paying for the stock or receiving it for his customer, and was thereafter declared a bankrupt, the broker is guilty of embezzlement within the statutory definition of that form of larceny. Penal Code, § 528, subd. 2.

(2). SAME—TRIAL—CHARGE—EXCEPTIONS.

Where the court, on the trial, had charged that the important, crucial and controlling question for the jury was whether the defendant took and appropriated the customer's money with criminal intent, and that before they could find the defendant guilty they must find that he intended to defraud the customer of his money, it was not error—when requested to charge " that even though the jury believed that the defendant had no right " to have the customer's money deposited in the bank account of his firm, " and had no right to check against the money so deposited, yet, unless they find as a fact beyond a reasonable doubt that when he signed some one of the checks on that account he did so with criminal intent, they must find the defendant not guilty "—for the court to rule: " I so charge; with that charge should be the statement that every person is presumed to intend the consequences of his acts." This statement, in no respect, qualified the instruction that the jury must find a criminal intent to have existed when the defendant appropriated the money to uses other than that of paying for the stock.

People v. Meadows, 136 App. Div. 226, affirmed.

APPEAL from an order of the Appellate Division of the Su-

preme Court in the fourth judicial department, entered January 12, 1910, which affirmed a judgment of the court at a Trial Term rendered upon a verdict convicting the defendant of the crime of grand larceny in the first degree and affirmed an order denying a motion for a new trial.

The facts, so far as material, are stated in the opinion.

*Joseph G. Dudley, Charles A. Dolson* and *Louis L. Babcock,* for appellant. The facts proved on the trial did not constitute the crime charged in the indictment. (Penal Code, § 528; *People v. Baker,* 96 N. Y. 340; *Le Merchant v. Moore,* 150 N. Y. 209; *Markham v. Jaudon,* 41 N. Y. 235; *Content v. Banner,* 184 N. Y. 121; *Richardson v. Shaw,* 209 U. S. 365; *Thomas v. Taggart,* 209 U. S. 385; *Dennison v. Emery,* 153 Fed. Rep. 427; *Harmon v. Sprague,* 163 Fed. Rep. 486; *Skiff v. Stoddard,* 63 Conn. 198). The exceptions to the court's charge were well taken and call for a reversal of the judgment. (Lawson on Pres. Ev. [2d ed.] 331; *People v. Plath,* 100 N. Y. 590; *People v. Baker,* 96 N. Y. 340; *People v. Flack,* 125 N. Y. 335; *People v. Martin,* 33 App. Div. 282; *People ex rel. Perkins v. Moss,* 113 App. Div. 329; *Hibbard v. United States,* 172 Fed. Rep. 66). It was reversible error to compel the defendant to testify that he declined to answer certain questions in the Bankruptcy Court upon the ground that they might tend to incriminate him. (*State v. Bailey,* 6 N. W. Rep. 589; *Buckley v. State,* 77 Miss. 540; Collier on Bankruptcy [4th ed.], 103; *People ex rel. Taylor v. Forbes,* 143 N. Y. 219; *Matter of Kaffenburgh,* 188 N. Y. 49; *People v. Fitzgerald,* 156 N. Y. 253; *People v. Crapo,* 76 N. Y. 288; *People v. Irving,* 95 N. Y. 541; *Burrell v. State,* 194 U. S. 572).

*Wesley C. Dudley, District Attorney,* for respondent. The crime charged in the indictment was abundantly established

by the facts proved on the trial. (*People v. Miller,* 169 N. Y. 339; *Commonwealth v. Cooper,* 130 Mass. 285; *People v. Hazard,* 28 App. Div. 304; 50 N. Y. Supp. 1023; *People v. Civille,* 44 Hun, 497; *People v. Moore,* 37 Hun, 93). After the defendant, as a witness in his own behalf, had testified, both on direct and cross-examination, that he had committed no crime in the Silverthorne transaction; that he had not intended to steal Silverthorne's money; that he honestly believed the money was the property of his firm, and that he had a right to use it, it was competent for the People to show by his cross-examination that when interrogated on the same subject in the Bankruptcy Court a short time before he had declined to answer on the ground that his answers would tend to incriminate him. These questions were asked solely for the purpose of affecting the credibility of the defendant as a witness. (*People v. Webster,* 139 N. Y. 73; *People v. Tice,* 131 N. Y. 651; *People v. Casey,* 72 N. Y. 393; *Brandon v. People,* 42 N. Y. 265; *Conners v. People,* 50 N. Y. 240; *People v. Hinksman,* 192 N. Y. 421; Wharton Crim. Ev. §§ 430, 432; *Commonwealth v. Smith,* 163 Mass. 411). The charge of the court was fair and presented no reversible error. (*People v. Moore,* 37 Hun, 93).

GRAY, J.:

The defendant was indicted for the crime of grand larceny in the first degree. The charge in the indictment, in substance, was that, on the 22d day of May, 1908, at the city of Buffalo, the defendant, as the servant, bailee, or agent, of one William E. Silverthorne, had in his possession and custody $72,012.50, the property of said Silverthorne, and that he, thereafter, with the intent to deprive and defraud the said Silverthorne of the said moneys, did, feloniously, steal the same. Upon being brought to trial, the defendant was found guilty by the jury and the judgment of conviction has been affirmed at the Appel-

late Division. The indictment was found under sub-division 2 of section 528 of the Penal Code; which includes, under the offense of larceny, the offense, formerly, known as embezzlement. That form of larceny required that the People, to support a conviction, should establish, in this case, that the moneys were delivered to the defendant as the bailee, or agent, of their owner and that he had, intentionally, appropriated the same to his own use, or to that of any other person than the owner.

The evidence upon the trial was such as to justify the verdict rendered by the jurors and by that verdict the following facts must be deemed to have been established: The defendant was a member of the firm of Meadows, Williams & Company, a firm engaged in a general brokerage business in the city of Buffalo, and, at the time of the transaction in question, was the active member in charge of the business. The complainant, Silverthorne, had been a customer of the office and, upon several occasions, had made investment purchases of securities. On May 20th, 1908, he came to the office and ordered the defendant to purchase 700 shares of the preferred stock of the United States Steel Corporation, at the price of 102¾. He told the defendant that he was buying for investment and that he wished the stock to be placed in his, Silverthorne's, name. He knew that the stock was to be purchased on the New York market. Defendant's correspondents in that city were Post & Flagg and a private wire connected the two offices; but the relation between the two firms was no other than that of a correspondence for the doing of business for the one, or the other, as the case might be. The quotations, upon which Silverthorne gave his order, were procured from Post & Flagg and they were given the order by the defendant to buy the stock. The next day the defendant sent Silverthorne a "memorandum," to the effect that his firm had "bought 700 U. S. Steel pfd. at 102¾" and showing the cost, with commissions, to be the sum of $72,-

012.50. Accompanying the memorandum was a letter from the firm, which, after stating the purchase, further, stated as follows: "This account received by telegraph from New York. Names of parties from whom purchase was made will be given if desired as soon as advices are received by mail." The next day, upon receiving this letter and memorandum of account, Silverthorne mailed to the defendant his check for the $72,-012.50; the receipt of which the defendant acknowledged by the return of the memorandum receipted. This check was deposited to the general account of the firm in their bank. Upon occasions, during the next few days, when Silverthorne called to know if his stock had arrived, he was told, in explanation of its non-arrival, that the delay was caused through the transfer office being closed. Silverthorne, being then on the eve of his departure for Europe, requested the defendant, as the stock was to be in his name, to keep it for him until his return; which the defendant agreed to do. When Silverthorne's check was received, the firm's bank account showed a credit of only $1,500 and the same day, and on days following, the defendant drew upon it, as so increased by the funds received from Silverthorne, in payment of the demands of creditors; individuals as well as firm. Payment was never made by defendant to Post & Flagg for the stock; no payment was ever, specifically, made upon account of its purchase and the shares of stock were never taken up from Post & Flagg. The course of dealings between that firm and the defendant's appears to have been for the former concern, upon executing orders given by the latter, to carry all securities upon marginal account, and these 700 shares of stock were bought, and were being carried, for the defendant's firm in that way. They knew no one in the transactions but defendant's firm; which, alone, was their customer. Payments were made to Post & Flagg, subsequently to the execution of Silverthorne's order, to which, largely, the proceeds

30

of Silverthorne's check contributed; but they were made upon the general marginal account, which the New York firm was carrying.  Within three months of this transaction, the members of defendant's firm were adjudged bankrupts, with liabilities very greatly in excess of their assets, and that was the situation which Silverthorne found, upon returning from Europe in September.  Neither defendant's firm, nor the trustee in bankruptcy, had received the shares of stock, for the purchase of which Silverthorne had furnished the former the moneys in question.

It seems to me that this was as plain a case, as could be imagined, of embezzlement within the statutory definition of that form of larceny.  The defendant's firm, in this transaction with Silverthorne, acted as his agent and, as such, their duty was to use the money intrusted to them in payment for the stock purchased on his order.  They had no discretionary power over the fund whatever.  Silverthorne had no general account with them.  Brokers are but agents for those who employ their services and the terms of the agency define and govern the nature and scope of the agent's powers.  The terms of the agency undertaken by the defendant, neither directly, nor by implication, authorized the doing of any acts, beyond such as were necessary to effect the purchase of, and the payment for, the particular kind and number of shares of stock.  For the effectuation of the purpose of the agency, these moneys were delivered to the defendant's firm.  There was no other purpose, which Silverthorne had to subserve in sending them this sum of money.

Of course, the moneys came lawfully into defendant's possession and therein lies the distinction between the embezzlement, of which the defendant was guilty, and the common-law form of larceny; in which latter offense, the intent to misappropriate must have existed at the inception of the transaction,

in which the property was obtained. Where the offense consists in the appropriation by an agent, a bailee, a trustee, or an attorney, of the property of the owner, the felonious intent need only exist at the time of the appropriation; for, in such a case, the property stolen would have been properly in the possession of the defendant. (*People v. Moore*, 37 Hun, 84.) The criminal act in this case was committed, and the criminal intent evidenced, when, departing from his duty to use the moneys in paying for the stock, the defendant diverted it to other purposes. Evidence of a criminal intent to defraud Silverthorne of his property was not wanting. The firm was heavily involved, the pressure of debt very great and the bank balance very low. The jurors were warranted in inferring that the defendant yielded to the temptation of relieving the pressure by diverting the funds received from Silverthorne to his own purposes; hoping, if not believing, that, during the latter's absence from the country, an opportunity might be afforded for restoration. A deliberate diversion of the moneys being shown, it required but slight evidence in the facts and circumstances to satisfy the jurors as to the existence of the felonious, or criminal, intent. His expectation, or intention, of restoring the moneys so diverted, of course, was of no avail. (Penal Code, section 549).

The argument that the relation of debtor and creditor existed is quite untenable. Not only did the defendant's firm have no funds to the credit of Silverthorne in general account, at the time; but the verdict establishes the truth of his evidence that he intrusted the moneys in question to them for the specific purpose of paying for the stocks he had ordered to be bought and of causing their transfer into his name.

The answer to the appellant's argument, that the title to the stocks was in Silverthorne and that the relation of pledgor and pledgee existed between him and appellant's firm, is that the

verdict has established the fact to be that, immediately upon being notified of his order having been executed, he remitted the amount representing the cost of the stocks. He had no general account with the firm. His check went to discharge his whole liability and if the moneys had been faithfully forwarded to New York, as the defendant was bound to do, the title to the stocks would have been perfected in him.

The dissent below is based upon a mistaken view of the effect of the defendant's acts, if not of the facts themselves. The criminal act charged was not in depositing the check to the credit of the firm account in the bank; it was in the misapplication, thereafter, of the funds, with which Silverthorne had provided defendant's firm through the check, by appropriating them to other uses than in payment for the stocks. In this form of larceny, it is assumed that the property stolen comes properly into the possession of the party appropriating it. When the check went to swell the bank account of defendant's firm, the fact that the relation of debtor and creditor then arose between the bank and its depositor in no wise changes the fact that the firm was in possession of Silverthorne's property as his agent for a particular purpose. They were not obliged to segregate it by a separate deposit; they were obliged, having it in their possession, to at once appropriate it to the purpose for which received.

The appellant argues that the trial court ruled erroneously upon the following request to charge " that even though the jury believed that the defendant had no right to have Silverthorne's check deposited in the account of Meadows, Williams & Company, and had no right to check against the money so deposited, yet, unless they find as a fact, beyond a reasonable doubt, that when he signed some one of the checks on that account he did so with criminal intent, they must find the defendant not guilty." Upon this the court ruled " I so charge; with

that charge should be the statement that every person is presumed to intend the consequences of his acts." Defendant, then, simply took an exception. This ruling presents no reversible error. The statement which was made, in charging as requested, but embodied a legal proposition, to be understood in all cases where the commission of criminal acts is charged against a defendant and they are shown by the evidence. It, in no respect, qualified the instruction that the jury must find a criminal intent to have existed, when appropriating the moneys to uses other than that of paying for the stock. Just previously, at the appellant's request, the court had already charged that " the important, crucial and controlling question in this case is whether Meadows took the money with a criminal intent. . . . purposely appropriating the money with a criminal intent." And, repeatedly, in the main charge, the court had impressed upon the jurors that, before they could find the defendant guilty, they must find that he intended to defraud Silverthorne of the money.

The appellant assigns error upon the trial in that the defendant was permitted to testify, upon his cross-examination, that, when interrogated on the subject of the Silverthorne transactions in the bankruptcy court, he declined to answer certain questions, upon the ground that his answers might tend to incriminate him. The argument is that the Bankruptcy Law made his testimony inadmissible in any criminal proceeding. Without discussing how far either that law, or constitutional provisions, were applicable to the case, under the circumstances of his offering himself as a witness and of his having testified, without objection, as to much that had occurred, it suffices to say that the question is not raised by any exception. The only exception, bearing upon the subject of the bankruptcy proceedings, was to the admission of evidence of what the referee in bankruptcy had advised the defendant as to his privilege.

Therefore, the question sought to be presented is not before us. If the methods, or the manner, of cross-examination by the prosecution, in any appreciable way, were objectionable, that was something for the Appellate Division justices to consider, which does not survive their review.

I find no material error to have been committed upon the trial and, therefore, I advise the affirmance of the judgment of conviction.

CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment of conviction affirmed.