(91 Misc. Rep. 101)

### PEOPLE v. WYCKOFF.

(Supreme Court, Special Term, Queens County.   June 14, 1915.)

1. EMBEZZLEMENT ☞44—EVIDENCE—SUFFICIENCY.
    Evidence *held* not to sustain a conviction for larceny.
    [Ed. Note.—For other cases, see Embezzlement, Cent. Dig. §§ 67–70; Dec. Dig. ☞44.]

2. EMBEZZLEMENT ☞4—INTENT—EVIDENCE.
    To justify a conviction of larceny of money, it is necessary to show that accused appropriated the money to uses other than that for which it was received, and that a criminal intent existed when the appropriation was made.
    [Ed. Note.—For other cases, see Embezzlement, Cent. Dig. § 1; Dec. Dig. ☞4.]

William F. Wyckoff was convicted of grand larceny in the second degree.  On motion for a certificate of reasonable doubt.  Granted, and accused admitted to bail.

Eugene N. L. Young, of Long Island City, for the motion.

Denis O'Leary, Dist. Atty., and Frank Adel, Asst. Dist. Atty., of Evergreen, opposed.

BENEDICT, J.  This is an application for a certificate of reasonable doubt whether the judgment of conviction entered against this defendant should stand, and for a stay of execution of the judgment pending the determination of an appeal taken to the Appellate Division from the judgment of conviction and from an order denying the defendant's motion for a new trial.

The defendant was indicted, charged with the crime of grand larceny in the second degree.  Trial was had in the County Court of Queens County before a county judge, acting as county judge of said county, and it resulted in a conviction upon which judgment was imposed that the defendant be imprisoned in the New York penitentiary for the period of one year.  The order to show cause herein contained a temporary stay pending the hearing and determination of this application.

[1, 2]  The defendant in the case at bar was an attorney and counselor at law and a member of the firm of Wyckoff, Clarke & Frost.  The firm was engaged in the general law practice, but the business of the firm was chiefly that of conveyancing, examination of titles, and investment of funds for clients upon bonds secured by mortgages.  The firm had an extensive business of this general nature, and had an office at No. 215 Montague street, Brooklyn, another office in the town of Jamaica, in Queens county, another in Long Island City, and a fourth at Mineola, Nassau county.  The firm had succeeded the former firm of Wyckoff, Statesir & Frost, and it and its predecessor had been in business for a considerable period.

The defendant was charged with the crime of grand larceny in the second degree under the following circumstances: A check for the sum of $700, representing the principal of a mortgage held by Fannie

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Halsey, one of the persons for whom the firm had been transacting business, both of a legal character and of a financial nature, was paid into the Brooklyn office of the firm on or about January 24, 1912, by check drawn to the order of the firm. This check was indorsed to the order of the defendant Wyckoff and deposited in an account in the Mechanics' Bank of Brooklyn standing in the name of William F. Wyckoff. Two payments of interest upon this sum were made to Miss Halsey after the receipt of the principal of the mortgage. About the 1st day of January, 1913, the firm of Wyckoff, Clarke & Frost was dissolved; and the defendant filed a voluntary petition in bankruptcy, the schedules in which were verified on the 13th day of February, 1913. Fannie Halsey appeared in the schedule of creditors whose claims were unsecured as a creditor for $700.

Upon the trial it appeared by undisputed proof that the account carried in the name of William F. Wyckoff in the Mechanics' Bank of Brooklyn was an account of the firm of Wyckoff, Clarke & Frost, and that in it were deposited very considerable amounts of money representing the investment and interest account of the firm with its clients. These deposits ran up, as was testified to by the cashier of the firm, at about the time of this alleged crime, to $200,000 or thereabouts in each month. Both of the partners, Mr. Clarke and Mr. Frost, who were called as witnesses by the people, as well as the cashier in the Brooklyn office, stated positively that this account was a firm account, although carried in the name of the defendant Wyckoff individually. It appeared by uncontradicted proof that not only had the defendant Wyckoff the right to withdraw funds from it, but that Mr. Frost, his partner, had a similar right, and that Mr. Vanderveer, the cashier in the Brooklyn office of the firm, had a similar right under power of attorney.

It appeared that in November, 1911, the complaining witness received a notification from the firm that the mortgage was to be paid off and that an assignment of it was required, and inclosing a blank assignment. She thereupon went to the office of the firm in Jamaica and saw Mr. Clarke. She executed the assignment of mortgage and left it with him. The mortgage had been received by her with the usual accompanying papers upon the settlement of the estate of her deceased sister, and all of these papers were delivered by her to the firm of Wyckoff, Clarke & Frost. She nowhere stated that she had any conversation with the defendant Wyckoff personally about the assignment of this mortgage. About the 24th day of January, 1912, the mortgage was paid off at the Brooklyn office of the firm by a check drawn or indorsed to the order of the firm, and delivered, not to the defendant Wyckoff, but to Mr. Vanderveer. This check was thereupon indorsed by him with a stamped indorsement, making it payable to the order of the defendant personally, and by another stamped indorsement making it payable for deposit in the Mechanics' Bank in the firm's account carried in the defendant's name as stated. At the time when this money went into the firm account in the Mechanics' Bank, the firm had a large credit balance in that account; it being shown that during the period from January, 1912, until October, 1912, there were average

balances in each month in that account running from $8,000 to $36,000. There is not even a scintilla of direct proof that connects the defendant with knowledge of the payment of the sum of $700, nor of its deposit in his account.

It appeared without contradiction that the firm of Wyckoff, Clarke & Frost charged a commission of 2 per cent. upon the collection and payment of interest which it made on account of its clients. In regard to the two interest payments made to the complaining witness subsequently to the receipt of the $700, it appeared that these were made in the customary and usual course of the firm's business, upon its regular forms of transmitting interest, in the firm name, and it also appeared that in this case the firm had deducted its usual commission of 2 per cent., and that its fee had been credited to the firm's account on its own books, and not to the individual account of the defendant Wyckoff. There is no testimony in the case to show that these subsequent interest payments were made with the defendant's knowledge or by his direction. Other than the inference drawn from the fact that a year after the alleged crime the defendant included in his bankruptcy schedules an acknowledgment of his personal indebtedness to the complaining witness, there is not in the case any proof supporting the charge against him which would not be equally applicable to the other members of his firm. In my opinion, criminal intent on his part cannot be predicated solely upon the admission of indebtedness contained in his bankruptcy schedules, and without criminal intent the conviction cannot stand.

The sum of $700, representing the principal of the mortgage, came lawfully into the possession of the defendant's firm as bailees with the consent of the complaining witness, and when deposited in the Mechanics' Bank it was still in the firm's custody. The indictment charges that the crime was committed on or about January 24, 1912, but the case is barren of proof of any felonious intent on the defendant's part at that time, or even of knowledge on his part of the payment. There is no proof as to what the firm—and certainly none as to what the defendant—was instructed to do with the money when received, whether to retain it pending investment, or to reinvest it, or to pay it over immediately upon its receipt to the true owner; nor is there any proof as to what application was in fact made of it, nor by whom such application, if any, was made. The jury, in order to convict, must have found upon the evidence that the defendant appropriated the money to uses other than that for which it was received and that a criminal intent existed when the defendant made such appropriation, which, under the indictment, must have been on or about January 24, 1912, and not at any date months afterward. People v. Meadows, 199 N. Y. 1, 92 N. E. 128.

The defendant did not have, in my opinion, a legal trial on account of numerous errors committed in the exclusion or admission of the evidence in the case; but it is not necessary to particularize these errors, because there was not, as I view it, sufficient proof to support the verdict of the jury that the defendant was guilty of the crime with which he was charged beyond reasonable doubt. I think the peo-

ple entirely failed to establish their case, and that the indictment should have been dismissed at the conclusion of the case.

The application for a certificate of reasonable doubt is therefore granted, and the defendant will be admitted to bail in the sum of $2,500.