PEOPLE OF THE STATE OF NEW YORK ex rel. JULIAN D. ROSENBERG, Relator, *v.* JOHN HANLEY, as Keeper of the City Prison.

PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HENRY M. PEERS, Defendant.

Supreme Court, New York Special Term, July, 1922.

Brokers — relationship between cotton broker and customers same as that between stockbroker and customers — debtor and creditor — when cotton broker cannot be held criminally liable for failure to return moneys to customer — habeas corpus — Penal Law, § 1290(2).

Complainant, a member of the American Cotton Exchange and one of a firm of cotton brokers, gave to defendant's firm, also cotton brokers, orders for the purchase of cotton. Defendant was a member of the New York Cotton Exchange. Complainant gave checks to defendant's firm for margin. The cotton purchases were sold at a profit and statements were sent to complainant showing the profits credited to his firm's account and checks were sent to him for these profits. Later defendant's firm became financially embarrassed and was unable to comply with complainant's demand to send check for the entire balance due his firm as defendant's firm had used the moneys in other ways. Complainant filed ·a petition in bankruptcy against defendant's firm and had defendant arrested. The by-laws of the New York Cotton Exchange were made part of the contracts between the parties.

Defendant is charged with a violation of subdivision 2 of section 1290 of the Penal Law. Defendant contends that his firm occupied a debtor and creditor position with complainant similar to a stockbroker and his customers trading on a margin. Complainant contends that in a cotton margin transaction the relationship is one of agency, that defendant was his agent and furnished with money for the purpose of the agency, which money he misappropriated. Defendant petitions for writ of habeas corpus.

The relationship between a stockbroker and his customers and a cotton broker and his customers reviewed, and *held,* that the rule applicable to stock transactions is applicable to cotton transactions so far as the question in this case is concerned; that the legislature in enacting section 1290, subdivision 2, of the Penal Law did not intend to change a transaction which is really one of debtor and creditor into one which would put the broker in a position of trustee or a bailee or some other fiduciary capacity wherein he would be obliged at all times to keep separate from his own moneys those advanced to him by customers and on demand return it to them under penalty of indictment and conviction of the crime of embezzlement or larceny; that the complainant did not set forth any charge before the magistrate of which a criminal court has jurisdiction; that the people have failed to make out a *prima facie* case; that a writ of habeas corpus issue to the end that defendant be discharged from custody.

Application for writ of habeas corpus.

*Seabury, Massey & Lowe* (*Matthias L. Connes,* of counsel), for complainant.

*Hays, St. John & Moore* (*Arthur Garfield Hays, L. E. Schlechta* and *Julian D. Rosenberg,* of counsel), for defendant Peers.

Cohalan, J.  The defendant is charged with the violation of subdivision 2 of section 1290 of the Penal Law.  The present matter is before me on an argument on a writ of habeas corpus. In January, 1922, the firm of Oliver & Houghton (hereafter called Oliver), cotton brokers, of this city, gave to Henry M. Peers & Co., another brokerage house, a firm of which defendant is a member, an order to purchase on their account 1,000 bales of cotton. After the purchase Oliver gave Peers & Co. a check for $10,000 " as margin of $10 a bale on the one thousand bales you just reported for our account."  Peers & Co. by letter acknowledged the receipt of this check, stating therein that the amount of the check had been placed " to the credit of your cotton account as requested."  The contracts were for March, May, July and October cotton.  Later on this cotton (future) was sold, realizing a profit to Oliver, which was credited to their account on the books of Peers & Co., and Oliver was so notified and acquiesced.  Other cotton purchases were then made under orders of Oliver and later sold at a profit; statements were sent to Oliver and the profits again credited to Oliver on the books of Peers & Co.  Later checks were sent to Oliver for these various profits, which Oliver acknowledged receiving.  Late in March of this year Oliver asked Peers & Co. that it " send a check for our entire *balance*  *  *  *  which makes your total *indebtedness* to us $10,434.56.  Unless we are in receipt of your check by bearer covering *this indebtedness* we will be obliged to take whatever steps our attorneys may advise," etc.  Peers & Co. were in financial difficulties at the time.  They had used the money in other ways and were unable to make the payment, and Oliver filed against them a petition in bankruptcy, and thereafter had defendant arrested, claiming the failure to repay the money constituted larceny.  It is conceded that no question of bucketing of orders is involved.  Whether or not a *prima facie* case of a violation of subdivision 2 of section 1290 of the Penal Code was presented upon the facts elicited by proof of the People's case before the magistrate depends upon what the relationship was between complainant and defendant, whether one of a fiduciary nature or one of debtor and creditor.  If the latter, then the defendant did not commit any crime under the section of the Penal Law above referred to.  If the former,

then, if the proceedings were otherwise sufficient, a *prima facie* case was presented to the magistrate. The defendant contends that Peers & Co. occupied a debtor and creditor position with Oliver, claiming their relationship was similar to a stockbroker and his customer in a stock margin transaction, which both concede is that of debtor and creditor. The complainant, on the other hand, contends that there is a clear distinction between a stock margin and a cotton margin transaction; that in the latter case the relationship is one of agency, one of a fiduciary nature. In a stock transaction the broker buys the stock indicated by the customer and advances all the money above the margin for the purchase. He is obligated to carry the stock for the benefit of his customer so long as the margin is kept good or until either side gives notice that the transaction must close. He is further obligated to have the stock at all times ready for delivery and must deliver or sell upon payment of his advances and commissions. The obligation of the customer to the stockbroker is apparent from the above. In the present cotton transaction the broker did not furnish any moneys for the fulfillment of the transaction. He had loaned nothing. The complainant contends that he was simply an agent doing as directed by a customer, for the purpose of which agency he was furnished with money which was misappropriated. The defendant concedes that if there were losses and the defendant agreed to carry them by advances and more margin out of their own funds a different situation might arise, but, as it was, there were no losses, nor did the defendant agree directly or by implication to advance any money or pledge himself in any sense in that line. The by-laws of the exchange, it is conceded, were made a part of the contracts between the parties, and under them the defendant could be called upon to furnish not alone a margin of $5 a bale, but in addition thereto the exchange could sell for margin up to $25 a bale, so that at any time the exchange could have called upon Peers & Co. to furnish as a margin in addition to the $10,000 claimed by the complainant an additional $15,000. Under the rules of the exchange Peers & Co. were responsible for the contracts. It entered into those contracts on behalf of Oliver for future delivery and assumed the obligation to either take over or deliver certain quantities of cotton, and Oliver was obligated to take over or deliver this cotton when the contracts became due, and since actual delivery was contemplated, according to the contract this would be the result unless the customer either sold or purchased against these contracts before delivery date. There was no actual purchase of the merchandise in question, and, apparently, the money was given to Peers & Co. for the

purpose of guaranteeing or protecting that company against loss. It was not a part payment on account, but more in the nature of security against the contract. That both sides considered it as such I believe their dealings and correspondence show. The question presented here seems not to have been decided by any of our courts. The nearest case in point is *Springs* v. *James,* 137 App. Div. 110. There the court said: " We do not think that the rules governing the relation of principal and agent apply in their entirety to the relation of the defendant as principal and the plaintiffs as members of the New York Cotton Exchange." In order to hold this defendant the magistrate must have found a *prima facie* case of larceny under section 1290 of the Penal Law referred to above. That section provides that a " person who, with the intent to deprive or defraud the true owner of his property  *  *  *  or to appropriate the same to the use of the taker, or of any other person:  *  *  *  Having in his possession, custody, or control, as a bailee, servant, attorney, agent, clerk, trustee,  *  *  *  appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof, steals such property, and is guilty of larceny." It is well to note here that the complainant was a member of the American Cotton Exchange, while the defendant was a member of the New York Cotton Exchange. Presumably both were familiar with the obligations and relationships existing between members of their respective associations and their customers, and presumably also the complainant knew the rules and by-laws of the New York Cotton Exchange. I have carefully considered the various points claimed to distinguish the relationship of a stockbroker and his customer and a cotton broker and his, but I cannot see where we can hold a man in one instance guilty of a crime in doing that for which in the other instance he may be held only civilly. I think the rule applicable to stock transactions is applicable to cotton transactions in so far as the question now before me is concerned. In the one case the broker buys a certain stock for his customer, and the stock theoretically belongs to the customer, subject to the lien of the broker for the advance made by him, whereas in a cotton transaction for future deliveries the broker, although he may not have been called on at the time to advance the balance of the purchase price of the cotton, still binds himself to be in a position to take that cotton in the future. If a cotton broker's customer fails to provide sufficient margin — and on this point it is well to note that under the rules of the Cotton Exchange the margin which a cotton broker might have to meet would be much in excess of the $10,000 of what was actually advanced here — the broker himself is obligated to do so and to take and

make delivery of the quantity of cotton covered by the contracts into which he has entered. The reasoning in *People* v. *Thomas,* 83 App. Div. 226, might well apply to the present matter. That case was one where money was deposited with the broker for stock and wheat. There the court held that the money deposited with the broker for margins lost its identity as the money of the depositor, and it was proper for the broker to place it to his general account in the bank or with another broker to be used in the same way as other money employed in the business, and the right of the depositor to that specific money is lost and he cannot claim that the broker has received such money in a fiduciary capacity. Were the court to hold in the instant case that Peers should be held, it would be stretching the provisions of the Penal Law far beyond that of any adjudication heretofore made. If he is to be held, then in every case where a customer deposits money with a broker to be used by him generally in his business the failure to return that money would leave him open to the charge of embezzlement or larceny. I do not think this was the intention of the legislature in passing the provisions of the Penal Law. It clearly did not intend to change a transaction, which is really one of debtor and creditor, into one which would put the broker in a position of a trustee or a bailee, or some other such fiduciary capacity, wherein he would be obliged at all times to keep separate from his own moneys those advanced to him by his customers, and on demand return it to them under penalty of indictment and conviction of the crime of embezzlement or larceny. The case of *People* v. *Thomas, supra,* seems to be the nearest case to the present matter, and this case in general holds that there is no difference between a wheat and a stock deal, except that possibly in a stock deal the proposition would not be so clear. I believe the same conclusion applies to a cotton deal as here. The present case is further strengthened by the facts that the parties here had a running account between them and statements were rendered on each transaction stating, " We credit your account," etc., and, further, that various sums were paid to the complainants in the course of the dealings. These various dealings show clearly a balance owing and that is all. It is as impossible to follow up the original money deposited as it is impossible to grant the demand that the original money be returned. I do not believe that the complainant set forth any charge before the magistrate of which a criminal court has jurisdiction, and it seems to me, as the court held in *People* v. *Paine,* 35 Misc. Rep. 763, " an effort to use the criminal courts as a means of enforcing an obligation the remedies respecting which belong exclusively to the civil courts established

for the purpose." The petition in bankruptcy filed by complainant against defendant strengthens this view. The defendant raises a question which might have some weight, but which, in view of the above, is unnecessary to consider here, and that is, that there was no evidence introduced before the magistrate to show whether the complainant was the real owner of this $10,000 or only acting as an agent for a customer. It is my opinion that the moneys deposited here as margin and credited to the cotton account of the complainant established the relationship of debtor and creditor and the customer had no property in the money, and if that be so there could be no larceny. In a prosecution for larceny and in an " information " the ownership of the property claimed to have been stolen is always material. It is very doubtful to me whether or not sufficient evidence was produced before the magistrate to show that the ownership was in the complainant at any time. It was not in the complainant after delivery to the defendant, actually or constructively, or in any other way we look at it. Without going into the other points raised by the defendant as to the sufficiency of the " information " beyond what I have stated above, I believe that the People have failed to make out a *prima facie* case, and the petition should be granted and a writ issued to the end that the said Peers be discharged from custody.

Ordered accordingly.