Daniel S. Wilson, Respondent, *v.* Alonzo B. Morley, Appellant.

Second Department, October 31, 1932.

*Philip C. Samuels* [*Max Lazarus* with him on the brief], for the appellant.

*Andrew Eckel* [*Robert M. McCormick* with him on the brief], for the respondent.

Davis, J. The plaintiff had traded with the defendant, a broker, for several years, dealing in stocks on margin accounts. In February, 1926, plaintiff had a credit in his account of approximately $56,000 and was owing defendant $34,000. There is dispute between the parties as to whether at about this time defendant was authorized to purchase for the plaintiff " Automotive Devices " stock of the value of $5,000. Defendant had purchased it and

added the amount to the indebtedness of plaintiff, making the total $39,000. Shortly thereafter the defendant transferred the entire account to another broker, together with the stocks held in the account, subject to the debit charge of $39,000.

The plaintiff sues for conversion and misappropriation, alleging damages of $5,000 (less certain credits), representing what he claims was the unauthorized addition to the indebtedness on the part of defendant by the amount paid for the Automotive stock. The defenses of the plaintiff's authorization and of ratification were submitted to the jury and were found adversely to defendant's claim.

In general, the relation between a customer and his broker is that of debtor and creditor. (*People* v. *Thomas*, 83 App. Div. 226.) The broker may be guilty of larceny and may be held in a civil action for conversion or misappropriation when without the consent of the owner he pledges or disposes of stock owned by the customer, which is deposited as collateral security for a loan (*People ex rel. Mansfield* v. *Flynn*, 64 Misc. 276), or as security for a margin account (*Heaphy* v. *Kerr*, 190 App. Div. 810; affd., 232 N. Y. 526), or where he has paid the full price of stock to be bought in his own name (*People* v. *Meadows*, 199 N. Y. 1). Formerly the question of larceny or conversion could not arise until the purchaser made payment and completed the purchase of the stock held on margin and was in a position to demand his stock certificates. (*People* v. *Thomas, supra.*) The broker could purchase such stocks in his own name and was not bound to keep the shares separate from other shares of the same kind owned by him. He fulfilled his duty if he kept in his possession, ready for delivery or subject to the orders of his principal, an amount of stock equal to that purchased. (*Caswell* v. *Putnam*, 120 N. Y. 153.)

The rule just stated was to a certain extent changed by the enactment in 1913* of section 956 of the Penal Law. This act extended somewhat the fiduciary relations between the customer and broker by forbidding the broker to pledge or otherwise dispose of for his benefit, without his customer's consent, any stocks in his possession belonging to a customer on which the broker had a lien for indebtedness due to him by the customer, unless he had in his possession or subject to his control stocks of the kind and amount to which the customer was entitled for delivery to him on demand, and thereby cause the customer to lose in whole or in part such stocks. (Penal Law, § 956, subd. 2.) It is evident that this statute was intended to hold the broker to a stricter

---

* See Laws of 1913, chap. 500.— [REP.

obligation of duty (*People* v. *Atwater*, 229 N. Y. 303) and to include stocks purchased on margin in which the customer had a special property interest, to become complete when he tendered payment of the balance due.

Here proof is to a large extent lacking as to the shares of stock held by defendant for plaintiff, in whose name the certificates were issued, and as to whether or not the plaintiff ever tendered payment in any sum and demanded delivery, as was necessary if he wished to complete his purchase. If the conversion was of any definite stock, these facts were essential. (*Levy* v. *Leonard*, 231 App. Div. 763; *Pistell, Deans & Co., Inc.*, v. *Obletz*, 232 id. 313, 315, 316.) The plaintiff seems to rely on the fact that there was conversion of the disputed item of indebtedness. This, taken alone, does not fall within the inhibition of the statute. It must be a pledge or other disposal of certain stock represented by the increased indebtedness that will constitute conversion. This stock could readily have been identified if the plaintiff had tendered the amount which he believed to be due, either to the defendant or to the other broker, and demanded his shares. Instead of doing this, he directed the new broker to transfer the account and shares to still another broker of his own choice upon payment to the former by the latter of the full amount of indebtedness. There is no proof that plaintiff has lost any stock, " in whole or in part," through the transfer made by the defendant.

Assuming, without deciding, that the transfer of the account and certain certificates from defendant to the new broker was a forbidden " disposal " of the stock, the plaintiff has furnished no proof that such transfer was made without his consent. Certain exhibits indicate that the transfer was made with notice to plaintiff and with his consent. If that be the fact, the plaintiff cannot recover in this action for tort. On a new trial further evidence may be offered on all the questions mentioned, concerning which we are left in doubt.

For the reasons stated, the judgment and order should be reversed on the law and the facts and a new trial granted, costs to appellant to abide the event.

Lazansky, P. J., Kapper, Scudder and Tompkins, JJ., concur.

Judgment and order reversed on the law and the facts, and a new trial granted, costs to appellant to abide the event.