Joseph Jaspan, J.
The defendant, by omnibus motion, seeks examination of the Grand Jury minutes, discovery, a bill of particulars and a reduction in his posted bail of $20,000.
The defendant is charged with grand larceny in the second degree in an indictment which alleges that he stole property owned by the Air Traffic Conference (ATC) and 110 Travel Ltd. (110), namely, approximately 1,500 airline tickets, 41 airline validation plates, and one agent validation plate all of which had a value in excess of $1,500.
The defendant is alleged to have used an agent assuming a fictitious name and purportedly acting for himself to acquire rights in a travel agency (110) which gave him access to the afore-mentioned tickets and stamps. No business was conducted by the travel agency after the defendant contracted for the rights thereto and it is alleged that the purchase was merely part of a larcenous scheme to acquire the contraband tickets and validating stamps. Ultimately, 37 of the tickets with a face value of $29,000 were issued of which $11,000 was successfully used for transportation and the remaining $18,-000 in tickets was intercepted at the "gate”.
The defendant in challenging the sufficiency of the Grand Jury minutes and in his application for reduction in bail urges that the tickets and stamps had no value in excess of the cost of preparing them, as for example, less than 4 cents for each ticket printed, and that neither ATC nor 110 was the owner thereof. If defendant’s position were sustained, the charges on defendant would be reduced to petit larceny, a misdemeanor reducing his exposure and hardly justifying such a large cash bail. The demand for the bill of particulars is at least partly related to the issue of value.
I have examined the Grand Jury minutes to find them legally sufficient to support the indictment. But such a finding would be justified even if I were to conclude that it only established a prima facie case of petit larceny, a lesser included offense (GPL 210.20, subd 1, par [b]). But the nature of the offense which can ultimately be established is relevant to other issues presented by this motion and will ultimately permeate the trial. For that reason, I now address myself to the issues of value and ownership.
*421 VALUE OF TICKETS AND VALIDATING STAMPS
Value of stolen property is defined in subdivision 1 of section 155.20 of the Penal Law as the market value of the property at the time and place of the crime or if same cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime.
Paragraph (b) of subdivision 2 states that the value of a ticket shall be deemed the price stated thereon, if any; and if no price is stated thereon, the value shall be deemed the price of such ticket or equivalent instrument which the issuer charges the general public.
Since the tickets were allegedly stolen in blank, the latter test is not helpful. Value must therefore be determined by the market value formula.
While I find no case dealing with the issue of blank airline travel tickets, there is sufficient precedent from which an analogous ruling can be made.
Value depends on the relevant market for the person who has possession of the stolen goods. Thus, market value of stolen property is its value in the market in which the thief would have to purchase the property and not value in the market in which the owner would have to replace the property. (People v Irrizari, 5 NY2d 142.) While an owner might replace tickets and validating stamps at the nominal cost involved in printing and other necessary processing, a thief would be required to bargain for these others at "street value” from an unlawful source or use unlawful means to purchase these assets at a value far in excess of its nominal worth as paper or rubber or metal.
In People v Colasanti (35 NY2d 434), the "stolen property” was 600,000 librium pills distributed for experimental use and hence not subject to market price or market value at the time of original distribution. The court held that the fact the pills were distributed free of charge is of no benefit to their thief or criminal possessor — even though the pills themselves had been recalled. It said that (pp 436-437) the: "underworld value of contraband may be used in determining value for the purposes of a larceny or criminal possession statute (see, e.g., United States v Tyers, 487 F2d 828, 831; United States v. Ditata, 469 F2d 1270, 1272; Churder v. United States, 387 F2d 825, 832-833). A contrary view would be intolerable, if only because it would immunize a thief or receiver from prosecu *422 tian for the higher degree of crime because he specialized in stolen goods which had no value in a legitimate market or were unacceptable to legitimate purchasers but with knowledge of the stolen nature of the goods available for sale. The purpose of the statutes fixing the higher degrees of crime is not related to regulating the economic market but to assessing the scale of criminal operations by the persons charged with offenses under the statutes.”
In United States v Tyers (487 F2d 828, cert den 416 US 971) the Second Circuit held that in determining value the jury could consider the "street value” of money orders and the fact that the defendant lacked the equipment to make the money order negotiable could be considered by the jury in ascertaining street value.
In United States v Ditata (469 F2d 1270), the defendant claimed that the value of blank stock certificates was limited to paper value, or nine cents per share. In holding to the contrary, the court said (p 1272): "We cannot attribute to Congress an intent to restrict value of property stolen from interstate commerce to the moment of the theft. Should this be done, the actual value might then be negligible while its potential value realized in the 'thieves’ market’ would be substantial. Attributing that intent to Congress would be a benefit to persons on the way to the thieves’ market, who would not only profit by their criminal activity but who would also risk a comparatively slight penalty. In our opinion, the Congressional purpose is better served by appraising the stolen certificates at the point of [the defendant’s] unlawful possession — the crime with which he was charged.”
In United States v Kramer (289 F2d 909, cited in Ditata, supra), the court held that blank money orders should be valued not at the point of receipt but at the higher value while the defendant was concealing or retaining them.
In the instant case, proof may be offered as to the cost of acquiring the tickets and validating stamps, the value in the thieves’ market, the increased value by reason of the use and attempted use as validated tickets and any other information available as to the defendant’s relevant market and the value in that market.
Accordingly, I hold that the Grand Jury testimony does not yield to a conclusion that the defendant may only be charged with petit larceny.
*423 OWNER
Subdivision 5 of section 155.00 of the Penal Law defines "owner” as "any person who has a right to possession thereof superior to that of the taker”.
The Grand Jury minutes establish a prima facie superior right of possession in 110 Travel Agency Ltd. and in the Air Traffic Conference who by its agreement with 110 provides: "All ticket forms and exchange orders supplied by or on behalf of the Carrier to the Agent shall be held in trust by the Agent until issued to the Agent’s clients to cover transportation purchased, or until otherwise satisfactorily accounted for to the Carrier, or to the Secretary AFAC, and will be surrendered upon demand, together with all airline identification plates, to the Secretary AFAC, or his designated representative, acting pursuant to the Air Traffic Conference Agency Resolution.” (Emphasis supplied.)
The motion to dismiss the indictment upon the ground that the Grand Jury minutes are legally insufficient is denied.
I am also denying the application to reduce bail. All of the alleged activities of the defendant in connection with this matter and his travel opportunities warrant the imposition of cash bail as set.
DISCOVERY
The District Attorney has affirmed that he has already delivered to the defendant copies of the items sought to the extent that they are in his possession or available to him. If additional tickets or correspondence referred to in item (g) become available to the District Attorney copies should be immediately provided to the attorney for the defendant. An opportunity shall also be provided for inspection of the originals during office hours upon request.
BILL OF PARTICULARS
Item 3 of the demand asks for information as to the cost to the owner of each item alleged to have been stolen by the defendant. This would constitute evidentiary material and, in any event, would not be critical to the determination of the case in view of my ruling (supra), with respect to relevant market.
*424 Items 1, 2 and 4 are granted; item 5 is denied.