OPINION OF THE COURT
Gabrielli, J.
Defendant appeals from an order of the Appellate Division which affirmed a judgment of Broome County Court convicting him of the crime of larceny in the second degree. The conviction is premised upon the claim that defendant embezzled certain funds that were in his possession but were actually owned by certain residents of a nursing home owned and operated by defendant. The dispositive question on this appeal is whether the funds which defendant was convicted of embezzling were held by him on behalf of the residents, or whether those moneys were in fact owned by defendant. For the reasons discussed below, we conclude that defendant was the actual owner of the money in question, although he was otherwise indebted to the residents. Since the mere failure to pay one’s debts cannot sustain a conviction for larceny by embezzlement, defendant’s conviction must be set aside and the indictment dismissed.
Defendant is the owner-operator of the Endicott Nursing Home. As is true of most such facilities, defendant’s nursing home is funded mainly in three ways: payments made by private residents, their families, or some other nongovernmental source; payments from local agencies made pursuant to the State Medicaid program on behalf of needy residents; and payments made by Medicare, the Federal health insurance program, for the care of eligible residents. As a condition to participating in the Medicare program, a nursing home is required to obtain certification from the Federal Government and to enter into a Medicare provider agreement in which it agrees that it will charge those persons eligible for Medicare no more than a set rate established by the Medicare program *300 for that particular home. The home is free, however, to charge private residents a higher rate. Furthermore, Medicare provides the full amount of the Medicare rate for the first 20 days of an eligible person’s stay at the home, while for the next 80 days, Medicare pays that rate less a coinsurance charge which the eligible resident is required to. pay himself. During that full 100-day period, however, the maximum which a home can charge an eligible resident is limited by the provider agreement to the Medicare rate.
As noted above, when a nursing home applies for participation in the Medicare program, it must first be certified and is then required to enter into a Medicare provider agreement. Moreover, before benefits are paid for a particular resident, that person’s eligibility must first be determined by Medicare. All this, of course, may and usually does take considerable time, and in the meanwhile the nursing home needs revenue to operate. The home’s solution in such a situation is to require even those residents who seem eligible for Medicare to pay their own way pending approval by Medicare. During this period the home may, and defendant did, charge the higher, private resident rates, rather than the lower Medicare rate. However, the provider agreement requires the home, upon being notified that a particular person is eligible for Medicare, to refund to that resident the entire amount which the resident had previously paid the home during the period in which he was actually eligible but had not yet been approved, including the difference between the Medicare rate and the higher private resident rate, less the coinsurance charge when applicable. If the payments have been made by someone other than the resident, the refunds are to be made to that person. If the resident has died in the interim, the payments are to be made to the patient’s estate, pursuant to State law. If for some reason the refund cannot be made within 60 days after the nursing home is notified that a particular resident is eligible for Medicare, then the nursing home is required to set aside an amount equal to the refund in a separate account until payment can be made to the proper party. After the nursing home refunds the proper amount to the appropriate person or places it in a separate account if a refund cannot be timely made, then the local Medicare representative (in this State, Blue Cross) reimburses the home at the Medicare rate. It is important to note that under this plan, no payments are required to be made by Medicare to the nursing home until *301 after the nursing home refunds the proper amount to the. resident or sets up a separate account when mandated.
In the instant case, the jury by its verdict necessarily found that instead of making full refunds to certain residents as was required by the Medicare agreement, defendant made only partial and in some cases no refunds. During the period prior to Medicare approval of those residents, defendant charged them at the higher private resident rate, as he was apparently allowed to do under the provider agreement. When he was notified that those persons were eligible for Medicare, he was then required by the agreement to refund to them the full amount of the payments they had made to him, less the coinsurance fee for periods after the initial 20 days. Instead, defendant refunded at most only the amount of the reimbursement payments Medicare was obliged to make to him for those persons, and retained the difference between the higher private resident rate and the Medicare approved rate. This was a clear violation of the provider agreement, which mandated full refunds. Unfortunately, despite defendant’s failure to refund the full amount due the residents, Medicare, through its agent Blue Cross, forwarded the Medicare payments to defendant although he was not entitled to any money under the agreement until he made full refunds to the residents. Defendant now stands convicted of larceny in the second degree on the theory that he embezzled funds owned by the residents to whom he did not give full refunds[1] (see Penal Law, § 155.05, subd 2, par [a]; § 155.35). The Appellate Division affirmed the judgment of conviction, and defendant now appeals to this court. There must be a reversal, since the funds defendant was convicted of embezzling simply were not the property of the residents.
A distinction must be drawn between the refusal to pay a valid debt and the crime of larceny by embezzlement (see, generally, People v Richardson, 55 AD2d 514). The essence of the crime of larceny by embezzlement is the conversion by the embezzler of property belonging to another which has been entrusted to the embezzler to hold on behalf of the owner (see *302 Penal Law, § 155.05, subds 1-2; People v Meadows, 199 NY 1, 4; People v Robinson, 284 NY 75). In the instant case, the money which defendant has been convicted of stealing never belonged to the residents of his nursing home, nor was it entrusted to defendant to hold on behalf of the residents. Although the residents had a contractual right to receive refunds from defendant equal to the full amount they had previously paid him, minus any coinsurance fees, the money from which defendant was required to make those payments belonged to defendant rather than to the residents. Hence, the failure to pay the full refunds did not constitute larceny by embezzlement.
When the residents initially paid the private resident rate to defendant, that money became the defendant’s money. It was not given to him in trust, and he was free to use it for any purpose he wished, although he was of course contractually obliged to provide the services which comprised the promised consideration for payment of the fees. The fact that defendant had also assumed an obligation to provide a refund should the residents subsequently be approved for Medicare benefits does not in any way modify the legal conclusion that those funds were the property of defendant and defendant alone.
Nor was defendant divested of his ownership interest in that money when he was notified that the residents had been approved for Medicare benefits. At that point, the provider agreement required defendant to make certain payments to the residents. Those payments, however, were to be made from defendant’s own money, not from any property of the residents which was in the possession of defendant. Thus, although the failure to make those payments constituted a breach of the contract, it was not a withholding of moneys owned by the residents, even under the broad definition of "owner” contained in the Penal Law (Penal Law, § 155.00, subd 5; cf. People v Steinberger, 89 Misc 2d 419).
Finally, the fact that Medicare funds were actually paid to defendant does not make his failure to provide full refunds to the residents a theft of property owned by the residents, since the Medicare funds were not the property of the residents, but rather the property of defendant. The funds given defendant by Blue Cross on behalf of Medicare were not intended to serve as the source of the refunds due the residents of the home. Rather, the money from Blue Cross was intended to *303 reimburse defendant for the money which he supposedly had previously refunded to the residents from his own funds. In fact, the money paid to defendant by Blue Cross was less than the amount he was obligated to refund to the residents, since he was required to refund the higher private resident rates, minus any coinsurance charge, while Blue Cross reimbursed him only at the Medicare rate. Indeed, the defendant actually did refund the Medicare rate to several of the residents whose funds he now stands convicted of embezzling. Although defendant could perhaps be said to be subject to criminal prosecution for the theft of Medicare funds from Blue Cross upon a showing that he engaged in practices which constitute larceny by false pretenses (see People v Karp, 298 NY 213), the present prosecution is for the theft of funds belonging to the residents of the home and not for the theft of funds belonging to Medicare or to Blue Cross. Defendant’s receipt of Medicare funds from Blue Cross adds nothing to the claim that he stole funds belonging to the residents of his nursing home.
 We note that the result would be different had either the initial payments made by the residents or the funds subsequently paid by Blue Cross been turned over to defendant to hold in trust for the residents or as an agent or bailee for the residents. Were that the case, defendant’s withholding of that money from the residents would constitute larceny by embezzlement (see People v Robinson, 284 NY 75, supra; People v Gelo, 32 AD2d 661). Here, however, no funds belonging to the residents were ever entrusted to defendant. As is noted above, the fees initially paid to defendant by the residents were not to be held in trust for the residents, but rather became the property of the defendant, to be used for his own purposes. Similarly, the funds paid by Blue Cross on behalf of Medicare were not to be held in trust for the residents, but were instead intended to reimburse defendant for the refunds he was previously required to have made to the residents. Although a constructive trust might possibly be imposed upon those funds pursuant to equitable principles applicable in a civil action because of defendant’s failure to have made those prior refunds in full, no actual trust was created by the terms of the provider agreement. It has long been true in this State that the "misuse” of funds upon which a constructive trust could be imposed does not comprise the crime of larceny by embezzlement (see People v Epstein, 245 NY 234, 242-243). This is so because the possible "beneficiaries” of a potential *304 constructive trust simply do not have the requisite pre-existing interest, superior to that of the legal owner of those funds, which is necessary to support a larceny conviction of that legal owner. We see no justification for modifying this rule. It was within the power of the parties to the provider agreement to have created a trust by their agreement, and had they done so defendant might well have been subject to prosecution for the wrongful withholding of trust funds. The parties failed to create such a trust, however, and thus the residents cannot be deemed the owners of any moneys in the hands of the defendant. Accordingly, defendant’s conviction for larceny cannot stand.
The People suggest that in fact the provider agreement did create a trust which defendant has breached. This contention is founded upon those provisions of that agreement which require the nursing home, if it is unable to refund the money to the proper person within 60 days, to set aside a special fund containing the full amount of the refund until the proper recipient of the refund may be determined. Those provisions, however, are inapplicable to this case, since the duty to segregate funds pursuant to the agreement arises only if and when the nursing home is unable to locate the proper recipient of the refunds. Where, as here, there is no failure to pay because of some difficulty in locating the proper recipients, but rather a refusal to pay refunds to presumably identifiable residents or their families or estates, that obligation does not arise. The agreement is quite clear that the primary and first obligation of the nursing home is to actually pay the refunds to the proper party. Where that proper party is identifiable, not only is the nursing home under no duty to create a special fund, but such an action would itself be a violation of the agreement since the nursing home is justified in doing so only if the proper recipient of the refund cannot be located. Indeed, there exists some inconsistency between the asserted basis for criminal liability in this case, the withholding of funds from the proper recipients, and the suggestion that defendant was somehow obligated to set aside those funds. The obligation to segregate arises only if the proper recipient cannot be found; if such were the case, the defendant obviously could not be held liable for failing to make payment to that proper recipi *305 ent, since the failure to do an impossible act generally may . not form the basis for criminal liability.[2]
In short, our examination of the provider agreement persuades us that it did not create a trust in the circumstances of this case. Hence, since the funds defendant was accused of embezzling were not owned by the residents, he may not be convicted of larceny pursuant to the theory asserted by the People. In light of this conclusion, we are not required to and do not reach the other issues presented by defendant on this appeal.
Accordingly, the order appealed from should be reversed and the indictment should be dismissed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

. The payment to the nursing home for the care of certain other residents was made by local agencies pursuant to the State Medicaid program, under an arrangement whereby defendant was obliged to repay those amounts to the local agencies should the residents subsequently be approved for Medicare benefits for those periods. Defendant was also indicted and tried for embezzling funds belonging to the local agencies, but was acquitted of those charges.

. It may well be that a nursing home operator who does set aside funds for the benefit of unidentified persons entitled to refunds and then converts that money is guilty of larceny by embezzlement, since in such a case he will have actually created a trust with respect to which he is both trustee and settlor, and the res of which may be viewed as the property of the beneficiaries for these purposes. Here, however, criminal liability was posited not upon the theft of funds which were set aside pursuant to the agreement, but rather upon the refusal to make refunds from defendant’s own moneys to identifiable persons. Although the People now suggest that defendant’s liability could be premised upon the theory that the agreement required him in all cases to either make the payment or set aside funds, this contention is without merit since the agreement clearly requires money to be set aside only when payment cannot be made to a proper person. More importantly, such an agreement would at most constitute a promise by the nursing home owner to create a trust from his own property. The failure to create such a trust would not constitute an embezzlement since the funds from which it was to be created would be the property not of the residents, but of the nursing home owner himself, and the failure to create a promised trust from one’s own property is not embezzlement.