OPINION OF THE COURT
Herbert I. Altman, J.
The defendant, who is charged with one count of grand larceny in the second degree and 139 counts of commercial bribe receiving, moves to dismiss the count of larceny. As to that count the indictment alleges that from on or about January 1, 1975 to on or about February 12, 1980, defendant committed the crime of grand larceny in the second degree by stealing certain property having an aggregate value in excess of $1,500 from M. Lowenstein Corporation (hereafter Lowenstein).
Initially, defendant contends that the evidence before the Grand Jury is legally insufficient to support a larceny count on the ground that, as a matter of law, conduct which is found to constitute commercial bribe receiving may not *469 be found to constitute larceny. However, the same conduct may constitute more than one crime and the People may charge all of them in one indictment (see People v Wisch, 58 Misc 2d 766; cf. CPL 200.20, subd 2, par [a]). Thus, contrary to defendant’s assertion, the inability of the parties and this court to find a case which holds that a particular course of conduct can constitute both commercial bribe receiving and larceny is not determinative of this issue. Rather, the proper standard of judicial inquiry is whether the evidence before the Grand Jury was “competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof” (CPL 70.10, subd 1). As indicated in People v Warner-Lambert Co. (69 AD2d 265, rearg ordered 50 NY2d 1054), the evidence must be viewed in the light most favorable to the People, and it may be legally sufficient “although it does not provide ‘reasonable cause’ to believe that the defendant committed the crime charged.” (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 70.10, p 348.)
Section 155.05 of the Penal Law defines conduct which constitutes the crime of larceny. Subdivision 2 of section 155.45 of the Penal Law provides that “[p]roof that the defendant engaged in any conduct constituting larceny as defined in section 155.05 is sufficient to support any indictment * * * for larceny other than one charging larceny by extortion.” (See, also, People v Farruggia, 41 AD2d 894.) Subdivision 1 of section 155.05 of the Penal Law broadly states that “A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.” Subdivision 2 sets forth specific means by which larceny may be committed. Additionally, grand larceny in the second degree requires that the property stolen exceed $1,500 in value (see Penal Law § 155.35). It is the People’s position that defendant’s conduct constitutes larceny committed by the means set forth in subdivision 1 of section 155.05 of the Penal Law and, additionally, by embezzlement and by obtaining property by false pretenses (see Penal Law, § 155:05, subd 2, par [a]).
*470 Inasmuch as I find that defendant’s conduct constitutes larceny committed both by the means set forth in subdivision 1 of section 155.05 of the Penal Law and by embezzlement, I need not address his argument that, absent a finding that an individual has committed larceny by one of the means set forth in subdivision 2 of that statute, an individual may not be found to have committed larceny solely by conduct which violates the broad language of subdivision 1, it being his contention that subdivision 1 was merely intended as a pleading statute, and that the specific conduct must be interdicted by subdivision 2. I note, however, that the language of a recent Court of Appeals decision suggests that larceny may be committed either by the means set forth in subdivision 1 or by one of the means set forth in subdivision 2 (see People v Keeffe, 50 NY2d 149, 155). Further, as subdivision 1 contains a broad definition of larceny and subdivision 2, which defines specific forms of larceny, begins with the words “[l]arceny includes”, it would not appear that subdivision 1 can only be violated by the specific means described in subdivision 2.
The evidence presented to the Grand Jury establishes that defendant was employed as a merchandise manager of the men’s and boy’s shirting division of Lowenstein, a manufacturer of textile fabrics. In that position, he was responsible for the general operations of the division, which included setting prices for goods.
Approximately 12 salesmen were employed by defendant’s division. These salesmen were assigned to particular accounts and were responsible for actually soliciting orders which, once obtained, would require the approval of defendant. In regard to two jobbers, in particular, Dasid Fabrics Corp. and Durvin Fabrics Inc. (hereafter Dasid and Durvin), defendant, rather than the salesmen, would contact the accounts directly and arrange the terms of particular transactions. Once an oral agreement was reached, the salesman for that particular account was ordered to prepare the necessary invoices.
During the years in question defendant entered into numerous agreements to sell “seconds” to Dasid and Durvin "at prices below their actual market value and below prices *471 charged to other accounts. These jobbers would then resell the goods to a third entity at a higher price. Lowenstein is conservatively estimated to have sustained an economic loss of approximately $433,000 as the result of defendant’s self-dealing in its goods, with defendant having received substantial amounts of money in the form of kickbacks. Thus, for example, the Lowenstein invoices would be marked “bill and hold” and, once the jobber paid Lowenstein, the goods would be released to the third entity, the ultimate purchaser. A portion of the profit received by the jobbers from the sale to the ultimate purchaser would then be remitted to defendant.
In one instance, fabric was sold to Durvin for $7,141.61. Durvin then resold the fabric to another one of Lowenstein’s customers, Riverside, for $8,773.94. Durvin received a $1,632.34 profit on this transaction and $980 of that amount was remitted to defendant.
While it was within defendant’s authority to set the price for goods, he had signed an employment contract prohibiting him from having any interest in any other business or enterprise and requiring him to devote his best effort in furtherance of the business of the company. Thus defendant was under a duty to maximize the profits of his employer and not to engage in self-dealing.
Defendant’s conduct in selling his employer’s goods at a price less than market value and then subsequently sharing in the profit achieved through the resale of the goods constitutes larceny under the definition set forth in subdivision 1 of section 155.05 of the Penal Law. The evidence indicates that defendant not only intended to deprive Lowenstein of the full market value of the fabrics, but also “appropriated” the fabrics to his own use by entering into a scheme with the jobbers to resell the fabrics, initially sold to them at a price below their market value, for a profit, a portion of which accrued to defendant and not to his employer. Thus, defendant wrongfully obtained a portion of the value of his employer’s fabrics.
Defendant’s conduct also constitutes larceny by embezzlement. The Court of Appeals has stated that “[t]he essence of the crime of larceny by embezzlement is the conversion by *472 the embezzler of property belonging to another which has been entrustéd to the embezzler to hold on behalf of the owner (see Penal Law, § 155.05, subds 1-2; People v Meadows, 199 NY 1, 4; People v Robinson, 284 NY 75).” (People v Yannett, 49 NY2d 296, 301-302.) Further, conversion has been defined as “an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner’s rights.” (Laverty v Snethen, 68 NY 522, 524.)
A classic example of conduct constituting larceny by embezzlement is depicted by the facts in People v Meadows (supra). In that case a customer ordered through defendant, a member of a brokerage firm, the purchase of 700 shares of a stock at a specified price. Although the customer’s check was deposited in the firm’s account, the shares of stock were never purchased and the funds were found to have been diverted to other purposes. It was noted by the court (pp 6-7) that “[t]he criminal act in this case was committed, and the criminal intent evidenced, when, departing from his duty to use the moneys in paying for the stock, the defendant diverted it to other purposes. Evidence of a criminal intent to defraud * * * [the customer] of his property was not wanting. The firm was heavily involved, the pressure of debt very great and the bank balance very low. The jurors were warranted in inferring that the defendant yielded to the temptation of relieving the pressure by diverting the funds received from * * * [the customer] to his own purposes; hoping, if not believing, that, during the latter’s absence from the country, an opportunity might be afforded for restoration. A deliberate diversion of the moneys being shown, it required but slight evidence in the facts and circumstances to satisfy the jurors as to the existence of the felonious, or criminal, intent.”
In the instant case defendant was responsible for setting prices for the goods manufactured by his division.. The significance of an employment contract such as the one he entered into was noted by the court in Edmond Weil, Inc. v Pintow (20 AD2d 537), where it indicated that implicit in any employment contract “is the obligation of the employee to use his best efforts in the interests of his employer *473 and not to do anything in the course of his employment detrimental to such interests. Particularly should he not wilfully harm the corporation he has contracted to serve.” Thus, the discretion afforded defendant in setting the prices was to be used in the best interest of Lowenstein. In most instances defendant was expected to sell those goods at the prevailing market price, although situations did arise in which it was necessary, for business reasons, to dispose of the goods at a lower price.
The evidence reveals a scheme by which defendant “converted” to his own use goods which were entrusted to him to sell for the benefit of the corporation. The scheme required defendant to initially sell the goods, at a price below market value, to a jobber which would immediately resell the goods to a third entity at a higher price and then remit a portion of the profit realized to defendant. This course of conduct reveals defendant’s criminal intent to deprive Lowenstein of the full market value of its goods, a substantial portion of that value having been diverted to defendant and the jobbers. Consequently, a jury could find that the property embezzled was the difference between the full market value of the goods sold by defendant to Dasid and Durvin and the value actually received by Lowenstein and/or the fabrics which were to have been sold by defendant on behalf of Lowenstein, but which he in effect sold on his own account. I agree with defendant’s position that the property embezzled was not the moneys received by defendant from the jobbers (see People v Yannett, 49 NY2d 296).
Defendant contends that the conduct of an agent who is authorized to sell goods and does so at a price below that at which he is authorized to sell does not constitute conversion. He relies on Monks v Bruce (3 NYS 419), wherein plaintiff directed defendant to sell a horse for not less than $500 and was further directed to return the horse if it was not sold for the specified amount. However, contrary to those instructions, defendant sold the horse for $196. The court held that defendant had not converted the horse by selling it for an amount below the authorized price, as he had in fact been authorized to sell the horse. It relied on the distinction noted in Laverty v Snethen (68 NY 522, *474 526, supra), “between an unauthorized interference with the property itself, and the avails or terms of sale.” Thus, that court stated that an agent who acts in total disregard of the authority conferred upon him is liable for conversion, whereas an agent who is authorized to dispose of an item for a designated amount and does so at a lower amount is not so liable.
In Laverty the court was confronted with the conversion of a principal’s property by his agent. The principal had authorized his agent to dispose of a note to a third party upon the receipt of payment. However, the agent disposed of that note without receiving payment. The court held (p 525) that delivery of the note by the agent to the third party in violation of the principal’s instructions resulted in an “unlawful interference with the plaintiff’s property which resulted in loss, and that interference and disposition constituted, within the general principles referred to, a conversion”.
The distinction between this case and those relied upon by defendant is the presence here of the elements of criminal intent and self-dealing. Here, defendant had discretion to establish the price for the fabrics. His mere selling them to the jobbers at a price below that which he might have otherwise obtained would not have constituted conversion. However, the evidence reveals that he went further than merely selling Lowenstein’s goods to the jobbers at a price below market value. He did so with criminal intent by diverting a portion of the profits realized from the resale of the goods to himself and others and, as a consequence, deprived Lowenstein of the full market value of its fabrics.
Inasmuch as proof that a defendant engaged in any conduct constituting larceny as defined by .section 155.05 of the Penal Law is sufficient to support an indictment, and as I find the evidence sufficient to support conduct constituting larceny by embezzlement, I need not determine whether the evidence before the Grand Jury also constitutes larceny by false pretenses.
The instructions read to the Grand Jury in regard to larceny committed by embezzlement are found to have been sufficient. The Grand Jury was read the appropriate statu *475 tory provisions, as well as a definition of larceny by embezzlement. As the court noted in People v Calbud, Inc. (49 NY2d 389, 395, n 1), ordinarily instructions to the Grand Jury will be found to be proper where that body is read the appropriate sections of the Penal Law.
Lastly, I reject defendant’s contention that a finding that his conduct constitutes larceny, as well as commercial bribe receiving, renders the larceny statute unconstitutional under the due process “void for vagueness doctrine.” That doctrine provides that “as a matter of due process, a criminal statute that Tails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,’ United States v Harriss, 347 U.S. 612, 617 * * * or is so indefinite that fit encourages arbitrary and erratic arrests and convictions,’ Papachristou v Jacksonville, 405 U.S. 156, 162 * * *, is void for vagueness. See generally Grayned v City of Rockford, 408 U.S. 104, 108-109” (Colautti v Franklin, 439 US 379, 390).
Initially I note that “courts of original jurisdiction should not set aside a statute as unconstitutional unless that conclusion is inescapable” (People v Cornish, 104 Misc 2d 72, 73). Moreover, there exists “a strong presumption that a statute duly enacted by the Legislature is constitutional.” (People v Pagnotta, 25 NY2d 333, 337.) Further, “[i]n non-First Amendment cases * * * a vagueness challenge must be examined in the context of the facts of each case.” (United States v Marcen Labs., 416 F Supp 453, 455, affd 556 F2d 562.)
The gravamen of defendant’s claim is that the larceny statute is impermissibly vague in that it does not give adequate notice that defendant’s conduct, which may constitute commercial bribe receiving, may also constitute larceny. It is clear from a reading of both statutes that each is intended to prohibit different types of wrongdoing. Section 155.05 of the Penal Law sets forth the means by which an individual may commit larceny and does so “in terms which are reasonably definite so that a person of ordinary intelligence will know what the law prohibits or commands” (People v Cruz, 48 NY2d 419, 423-424). As I find that section 155.05 of the Penal Law adequately defines the means by which *476 larceny may be committed and that the evidence before the Grand Jury was legally sufficient to support the count, defendant’s constitutional challenge is rejected.
Accordingly, defendant’s motion is denied.