THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SIDNEY FELBER, Appellant.

First Department, May 8, 1942.

I. *Maurice Wormser*, for the appellant.

*Stanley H. Fuld, Assistant District Attorney*, of counsel [*Richard G. Denzer* and *Charles W. Manning, Deputy Assistant District Attorneys*, with him on the brief; *Frank S. Hogan, District Attorney*], for the respondent.

COHN, J.   Mab Motors, Inc., had two places of business where it engaged in selling automobiles; one was located in New York county and the other in Bronx county. In October, 1936, this corporation began the embezzlement of New York city sales taxes collected from its customers on sales made by its Manhattan branch. Though separate books were kept by each branch, but one return was made by the corporation through its Bronx office for every three-month period since the aforementioned date. The fraud was accomplished by making entries in the Manhattan

cash disbursements books indicating that the tax collected from purchasers at the Manhattan branch had been paid. A check for the amount of the sales taxes collected for the preceding three months would then be forwarded by the Manhattan office to the Bronx branch, where the payment was recorded as received for purposes other than sales taxes. The returns made to the city in each instance failed to include the taxes collected in the Manhattan office. The dishonest practices continued until an examination of the books of the corporation conducted by the city in June, 1939, uncovered the thefts.

The People charged that defendant Felber, who was an accountant employed by Mab Motors, Inc., aided and abetted the embezzlement by devising the system of book entries and by directing that false notations be made in the records of the Manhattan branch. He was convicted of the larceny of $2,470.68, the amount collected by the Manhattan branch from customers for sales taxes during July, August and September, 1938. His conviction for forgery was predicated upon an entry made in the books of the Manhattan office on October 14, 1938, falsely indicating that the proceeds of the check in that sum were to be paid to the city.

The indictment against defendant and nine others, including Mab Motors, Inc., contained counts charging conspiracy, grand larceny by embezzlement, and forgery in the third degree. The corporate defendant, and four individual defendants who were officers and stockholders of Mab Motors, Inc., pleaded guilty to the charge of conspiracy. At the opening of the trial the case was severed as to four other defendants, including two accountants employed by Felber, namely, Harry Barrett and Harold Wolk. The defendant Felber was tried alone.

Ten counts of statutory larceny and the nine counts of forgery were grounded upon ten separate checks sent from the Manhattan to the Bronx office during the period commencing October, 1936, and ending June, 1939. Each check represented the accumulation of taxes collected from customers for the preceding three-month period. The jury convicted defendant of only one transaction, namely, that based upon the embezzlement of the sales taxes collected in the Manhattan branch for July, August and September of 1938. On all other charges, defendant was acquitted.

It is insisted that no larceny has been proved against this defendant because the officers of Mab Motors, Inc., whom defendant was charged with aiding and abetting, did not themselves appropriate any money from the city; that while they may be penalized for failure to pay over the sales taxes, they may not be charged with embezzling funds because the moneys collected from taxpayers

at no time belonged to the city. We find no merit to this contention. Mab Motors, Inc., had in its possession and custody as bailee, agent or trustee for the city, the funds which it had collected from its customers, and when it and its officers applied such sums to their own use, the larceny was complete. The fraudulent conversion, by a vendor, of city sales tax money so collected from purchasers, constitutes larceny. That is the rule in other jurisdictions (*People* v. *Kopman*, 358 Ill. 479; 193 N. E. 516; *State* v. *Sankey*, —— S. D. ——; 299 N. W. 235; *Anderson* v. *State*, 221 Wis. 78; 265 N. W. 210) and it is the law of this State. (Penal Law, § 1290, subd. 2.)

Defendant also assigns as error that the false entry, which was the basis of the twenty-sixth count of the indictment on which he was convicted, was not a forgery because it was a truthful entry. The entry in question was made in the cash disbursements book of Mab Motors' Manhattan branch. It recited that in October, 1938, a check had been drawn for city sales tax on the Marine Midland Trust Company in the sum of $2,470.68 and sent to the Mab Motors' Bronx office for payment to the city. The entry reflected a payment of sales taxes by the Manhattan branch of the Mab Motors Company when no such payment had been made, or was ever contemplated. Since October of 1936, the device of sending checks from the Manhattan branch to the Bronx branch had been regularly employed to defraud the city. The entry was nothing more than a sham which concealed the embezzlement of the sales tax funds, and was obviously a false record. (*United States* v. *Darby*, 289 U. S. 224, 226, 227; *Billingsley* v. *United States*, 178 Fed. 653.)

At the trial, the principal witnesses against defendant were Lucy Cohen, the bookkeeper of the Manhattan branch of Mab Motors, Inc.; Clarisse Weill, the bookkeeper in the Bronx office; Harold Wolk and Harry Barrett, the two accountants employed by defendant, who had charge of Mab Motors' bookkeeping and audited the books about once a month; and Harry Hershey, sales tax auditor, employed in the comptroller's office of the city of New York. The only evidence which connected defendant with the false entries in the books of the company was the testimony of Wolk and Barrett. They had done all the actual accounting work for the corporation during the period involved and had prepared the fraudulent sales tax returns. Their testimony was that Felber had advised them to make the false entries.

The People do not charge that defendant received any of the tax money of which the city was defrauded, nor is there any proof that he was paid excessive fees for the accounting services he

rendered to the corporation. Felber, who testified as a witness in his own behalf, disclaimed any knowledge of, or participation in, the larceny or the forgery and denied giving any improper instructions to Wolk or to Barrett.

Prejudicial error is asserted by defendant in the court's instructions to the jury on the issue of corroboration of the testimony of Wolk and Barrett, it being argued that these two witnesses were accomplices. If, as the People claim, Wolk and Barrett were not accomplices of defendant, then any error in this regard would be harmless. However, we think it was at least a question of fact for the jury as to whether these two men were Felber's accomplices. With respect to the larceny charge, Wolk and Barrett had prepared the false sales tax returns and Wolk knew that the corporate defendant and its officers were withholding from the city the sales taxes collected. Barrett, who assumed Wolk's duties in connection with Mab Motors' books in February, 1938, was also aware that the city was not receiving all the sales taxes due it after the early part of 1938.

As to the forgery charge, whether Wolk and Barrett were accomplices of defendant was also a jury question. Subdivision 4 of section 889 of the Penal Law, which defines the crime of forgery in the third degree, contains the following saving clause: "but this provision shall not apply to any clerk, bookkeeper, or other employee, who, without personal profit or gain, merely executes the orders of his employer." If the jury found that Wolk and Barrett had made false entries pursuant to orders from their employer without personal profit or gain, then they were not accomplices of the forgery and as to that crime their testimony implicating Felber required no corroboration. However, the jury might well have refused to believe that these two witnesses did not commit the forgery for their own personal profit or gain. In that event, they would be accomplices and their testimony would then require corroboration even as to the forgery.

Let us now examine the charge of the court upon this question. The trial court informed the jury that if they found Wolk and Barrett to be accomplices, the defendant could not be convicted on their testimony alone. Thereupon he correctly instructed them that "a conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime." (Code Crim. Proc. § 399.) The court then charged: "This other evidence which corroborates need not convince you by itself of the defendant's guilt beyond a reasonable doubt. The corroborating evidence must merely connect the defendant with the

commission of the crime. To find the defendant guilty on any count, you must be convinced beyond a reasonable doubt from all the evidence of the guilt of the defendant. *Those books of Mab Motors, Inc., and the testimony of the bookkeepers employed by the corporation would be such evidence, if you believe it."* (Emphasis ours.) The meaning of the sentence emphasized was made plain by the following colloquy: "Mr. Brodsky: Your Honor, I believe you charged that corroboration would be necessary, that if the jury found that Miss Weill and the books of the defendant corporation might furnish such corroborating evidence — did I understand you to say that? Am I wrong about it? The Court: I charged that the books and the testimony of the other witnesses may furnish such corroborating evidence. Mr. Brodsky: To which I except." Thus the court advised the jury that the books of the company and the testimony of the bookkeepers might supply the necessary corroborative evidence of the testimony of Wolk and Barrett, if they were found to be accomplices. In so instructing the jury, we think the court erred.

The book entries were physical facts which no one disputed. Moreover, none of the entries was in defendant's handwriting and nothing disclosed by the books as such would tend to identify the defendant with the commission of the larceny or the forgery. This is likewise true of the testimony of the two bookkeepers, Miss Cohen and Miss Weill. Neither one testified that she had received from Felber any instructions to make false entries. All such directions to them came from Wolk and Barrett. Miss Weill at one point did state that she made entries which were false at the direction of either Mr. Wolk or Mr. Felber, but, as is now admitted, it was Wolk who had given such instructions. The People, with commendable frankness, concede that if " the jury were led to believe the corporate books and the testimony of the bookkeepers could be regarded as sufficient corroboration," then error was committed.

That such error is prejudicial is now well settled. (*People v. Kress*, 284 N. Y. 452, 459, 460; *People v. Maione*, Id. 423, 425; *People v. Feolo*, Id. 381; *People v. Nitzberg*, 287 id. 183; *People v. Crum*, 272 id. 348, 353.) " Section 399 requires that an accomplice must in some degree be corroborated in his testimony that an accused was implicated in the commission of the crime. Evidence which merely shows that the crime was committed in the fashion described by an accomplice is not such corroboration." (LOUGHRAN, J., in *People v. Maione, supra*, at p. 425.) " But, where the corroborative evidence standing alone has no *real* tendency to connect defendant with the commission of the crime, it is insufficient." (RIPPEY, J., *People v. Kress, supra*, at p. 460.)

It is suggested that the error may be overlooked because Wolk and Barrett were not accomplices and the jury must have so found. There is no basis in the record for such speculation. Upon the evidence and under the charge of the court, the jury was warranted in finding these two witnesses were accomplices. If it did so determine, and the People concede the jury may well have done so, corroboration of the accomplices' testimony was essential. (*People* v. *Feolo, supra,* at pp. 384, 385; *People* v. *Lazar,* 271 N. Y. 27.)

The People also contend that requisite corroboration of the testimony of Wolk and Barrett is to be found in other testimony adduced upon the trial. Though we assume that there is such other evidence, there can be no escape from the conclusion that the jury in arriving at its verdict may have relied, solely, or, at least, in part, on those items of evidence which were incorrectly indicated in the charge as supplying the requisite legal corroboration. A conviction thus arrived at is improper and should be set aside. (*People* v. *Maione, supra; People* v. *Markus,* 168 App. Div. 184, 186.)

The case was closely contested and the jury deliberated for many hours before arriving at its verdict. There is no means of ascertaining what part the erroneous instruction complained of played in the jury's deliberations. A person charged with crime has the absolute right to be tried in conformity with law. Defendant, a certified public accountant and a member of the bar, according to the character testimony, enjoyed a good reputation in the business and social community in which he has lived. There is no proof that he shared in any way in the fruits of the crimes admittedly committed by others. The felony convictions, with the serious consequences which attach to them, should not be permitted to stand unless defendant's guilt is established upon a trial free from substantial error.

For the foregoing reasons, the judgment of conviction should be reversed and a new trial ordered.

MARTIN, P. J., UNTERMYER, DORE and CALLAHAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered.