OPINION OF THE COURT
Irving Lang, J.
The principal issue raised by defendants’ multifaceted motion to dismiss the instant indictments is whether the failure to pay New York State sales tax can subject the delinquent taxpayer to a criminal prosecution for larceny.
THE INDICTMENTS
Frank Valenza is the sole owner of two of New York City’s most famous Manhattan restaurants, Proof of the *87 Pudding and The Palace. Mr. Valenza and his corporate entities, Proof of the Pudding, Inc. and Melting Moments, Inc. (doing business as the “Palace”), have been charged in two indictments with grand larceny in the second degree (Penal Law, § 155.35) and failure to file a New York State and local sales and use tax return (Tax Law, § 1145, subd [b]).
It is alleged that from June 1, 1978 up to and including July 31, 1979, the Palace Restaurant neither filed a sales tax return nor paid any sales taxes to the State, amounting to approximately $67,000. In addition, it is charged that during the period between January 1, 1978 and March 20, 1980, the Palace Restaurant failed to record as sales moneys received for catering private parties, thereby withholding approximately $5,000 worth of sales taxes from the State.
Regarding the Proof of the Pudding Restaurant, it is alleged that from June 1, 1978, up to and including July 31,1979, the defendants neither filed a sales tax return nor paid any sales taxes to the State, amounting to approximately $110,000. Furthermore, for the period between January 1, 1976, up to and including December, 1979, the defendants issued gift certificates to various businesses in exchange for money and/or services and that, although sales taxes were collected on meals paid for by these certificates, the defendants failed to record those transactions as sales, thereby depriving the State of approximately $64,000 in revenue. A total of about $246,000 is the amount allegedly stolen.
Defendants are now undergoing reorganization in Bankruptcy Court of the Southern District of New York.
THE CONTENTIONS
There is no provision in the Penal Law or Tax Law which expressly categorizes failure to pay the State sales tax as a larceny. Indeed, the Attorney-General has only recently begun to prosecute these cases as larcenies.
Defendants argue that the State cannot proceed under the larceny statute since the Legislature intended subdivision (b) of section 1145 of the Tax Law to be the exclusive method of prosecution for violations of the sales *88 tax laws. Furthermore, defendants claim that failure to pay sales tax merely creates a civil debt and therefore is not punishable as a crime. The People contend that the defendant collected the sales taxes as a trustee for and on account of the State, pursuant to subdivision (a) of section 1132 of the Tax Law, and that failure to pay over the taxes constitutes larceny under section 155.05 of the Penal.Law.
EXCLUSIVE REMEDY
Subdivision (b) of section 1145 of the Tax Law provides, in part: “Any person failing to file a return or report required by this article *** shall, in addition to any other penalties herein or elsewhere prescribed, be guilty of a misdemeanor, punishment for which shall be a fine of not more than one thousand dollars or imprisonment for not more than one year, or both such fine and imprisonment.”
A State may proceed under a general statute even though a more specific criminal statute is available, unless the specific statute is intended to be the exclusive remedy (People v Eboli, 34 NY2d 281; People v Sansanese, 17 NY2d 302). However, the rule that the specific controls the general applies only where the specific statute is in irreconcilable conflict with the general one (People ex rel. Knoblauch v Warden of Jail of Fourth Dist. Magistrates’ Ct., 216 NY 154; People v McLaughlin, 93 Misc 2d 980). The two statutes are not in irreconcilable conflict.
First, the elements of the two offenses differ. Subdivision (b) of section 1145 punishes a simple failure to file a return. No intent to defraud the State is required. On the other hand, “larceny” is defined as the wrongful taking, obtaining or withholding of the property of another, committed with the intent to deprive another of property or to appropriate the same (Penal Law, § 155.05, subd 1).
The People are charging defendants with what is in effect embezzlement, an essential element of which is fraudulent intent (People v Chesler, 71 AD2d 792, affd 50 NY2d 203; People v Klinger, 165 Misc 634). Since the larceny statute contains this additional element, the two statutes are not in conflict (see Anderson v State, 221 Wis 78; People v Chesler, supra).
*89 Secondly, subdivision (b) of section 1145 specifically allows the use of other appropriate sanctions through the following language: “Any person failing to file a return * * * shall, in addition to any other penalties herein or elsewhere prescribed, be guilty of a misdemeanor” (emphasis added).
While the defendants argue that this phrase refers to civil remedies contained in other provisions of the Tax Law, such as subdivision (a) of section 1145 providing for penalties and interest on unpaid sales taxes or section 1141 providing for proceedings to recover unpaid sales taxes, that analysis is unconvincing.
The People make an analogy to section 695 of the Tax Law which establishes criminal penalties for violations of the State income tax laws. Even though that section does not specifically use the phrase “in addition to any other penalties herein or elsewhere prescribed,” under section 685 the State is authorized to seek civil penalties for such violations. If the phrase is not necessary to establish that the State may pursue both civil and criminal penalties pursuant to sections within the Tax Law, then the inclusion of the phrase would most likely be an authorization for the State to pursue penalties outside the Tax Law. If not, then the words are mere surplusage.
The primary consideration in the construction of a statute is to ascertain the legislative intent (McKinney’s Cons Laws of NY, Book 1, Statutes, § 92). In ascertaining intent, words are to be given their plain and ordinary meaning and the language of the statute construed according to its natural and most obvious sense (McKinney’s Cons Laws of NY, Book 1, Statutes, § 232).
The phrase “herein and elsewhere prescribed” is not an obscure one and is fairly unambiguous. It makes perfect sense to say that the phrase refers to any other appropriate sanctions both inside and outside the Tax Law.
As evidence that the Legislature intended the Tax Law misdemeanor provision to be the exclusive remedy for sales tax violations, defendants rely on the fact that in the past five years bills introduced in the Legislature to upgrade the penalties in that provision to a felony have all failed to *90 pass. While the failure to adopt an amendment is a factor to be considered in ascertaining legislative intent, it is but one factor; it need not be the determining one (New York State Bankers Assn. v Albright, 38 NY2d 430; Matter of Aponte v Department of Investigation of City of N.Y., 51 AD2d 905).
It should be noted that the bill submitted this past year was withdrawn at the behest of the Attorney-General, whose legal opinion was that the larceny statute would be sufficient to secure felony convictions for sales tax violations. I hold, therefore, that the Tax Law is not the exclusive remedy for sales tax violations.
TRUST
The heaH of the People’s argument is that defendants collected the sales taxes as a trustee for the State and that the failure to pay over the taxes constituted a larceny. Subdivision 1 of section 155.05 of the Penal Law states that: “A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.”
This broadly defined statute encompasses all forms of larceny, including larceny by embezzlement (Penal Law, § 155.05, subd 2, par [a]).
The law is clear that a trustee who withholds moneys held in trust commits the crime of larceny by embezzlement (People v Yannett, 49 NY2d 296; People v Robinson, 284 NY 75; People v Epstein, 245 NY 234). That the State may be an owner of property for larceny purposes is also clear (Penal Law, §§ 155.25, 10.00, subd [7]).
Trustee or not trustee — that is the $246,000 question. If an actual trust is created then the defendant is chargeable with larceny. If a mere debtor-creditor relationship or even a constructive trust is involved then the larceny counts must fall (People v Yannett, supra). The answer is dependent upon whether or not the Tax Law sufficiently establishes a trust relationship between a vendor and the State with regard to sales taxes.
*91 The crucial language in this case is contained in subdivision (a) of section 1132 of the Tax Law: “Every person required to collect the tax shall collect the tax from the customer when collecting the price, amusement charge or rent to which it applies. If the customer is given any sales slip, invoice, receipt or other statement or memorandum of the price, amusement charge or rent paid or payable, the tax shall be stated, charged and shown separately on the first of such documents given to him. The tax shall be paid to the person required to collect it as trustee for and on account of the state.”[1] (Emphasis supplied.)
A trust may be created either by voluntary agreement between the parties (People v Epstein, supra) or by operation of law (People ex rel. Belleci v Klinger, 164 Misc 530).
The essential elements of a trust are a beneficiary, a trustee, and a trust res, i.e., identifiable property (61 NY Jur, Trusts, § 52). “There is no requirement that particular words least of all the word ‘trust,’ or stereotyped legal expressions, be used. A trust creator is perfectly free and untrammeled in his use of language, so long as the language used clearly indicates an intention that ascertainable property is to be held by a fiduciary, and that the income therefrom is to be devoted to a specific purpose for an indicated period of time.” (61 NY Jur, Trusts, § 59, pp 167-168.)
A look at other statutes whereby trusts have been created is instructive. Subdivision 1 of section 7-103 of the General Obligations Law (formerly Real Property Law, § 233 [L 1935, ch 581]) provides that money deposited as security for the rental of real property “shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same”. Under this section, the usual debtor-creditor relationship between a lessee and lessor is transformed into a trust relationship by operation of law (Mallory Assoc. v Barving Realty Co., 300 NY 297, rearg den *92 300 NY 680) and unlawful retention of such moneys by a landlord constitutes a larceny (People ex rel. Belleci v Klinger, supra).
Article 3-A of the Lien Law establishes trust funds of moneys received by an owner, contractor or subcontractor in connection with an improvement of real property. There are specific definitions of trust, trust claims, beneficiaries, the purpose of the trusts and details regarding the duties of the trustee and rights of the beneficiaries. Misappropriation of trust funds under the article is a larceny and punishable as such under the Penal Law (Lien Law, § 79-a).
There are also court rules which establish trust funds of moneys received by an attorney on behalf of a client and which lay down strict requirements that such funds not be commingled with personal assets or accounts and that attorneys keep true and accurate records (22 NYCRR 603.15, 691.12,1022.5; 22 NYCRR 603.7 [d] [1]; 691.20 [d] [1]).
The structure of the Tax Law which imposes sales taxes on customers is also a detailed one with numerous requirements» When a transaction is made, a vendor must collect a specified percentage as a tax, which is stated, charged and shown separately on the sales receipt (Tax Law, § 1132, subd [a]). That amount is earmarked for the State and must be reported and paid over at definite periods of time (Tax Law, §§ 1136,1137). A vendor is required to keep true and accurate records of all transactions (Tax Law, § 1135).
The defendants argue that there is no specific duty to keep the tax money separate from the vendor’s other funds, and that since this prohibition against commingling is an essential element of a trust, its absence proves conclusively that a trust has not been created. The defendants are misguided. The prohibition against commingling is a fiduciary duty and a generally accepted feature of trusts, but it is not an essential element in the creation of a trust.
There is case law, albeit scant, on the issue of whether section 1132 of the Tax Law creates a trust fund.
In Canale v New York State Dept. of Taxation & Fin. (84 Misc 2d 786), plaintiff, who had been appointed receiver of a restaurant during the pendency of a mortgage foreclo *93 sure, surrendered its liquor license and sought a refund of part of the licensing fee. The State claimed a setoff for franchise and sales taxes incurred by plaintiff’s predecessor. The court held that the State’s claim was valid and that the State’s right to a setoff was superior to the rights of other creditors or lienors inasmuch as sales taxes collected by a vendor did not become the property of the vendor but belonged to the State as the legal beneficiary of the trust fund established by subdivision (a) of section 1132.
A case dating back to 1942 held that a conviction for larceny by embezzlement based on the failure to pay over city sales taxes was valid (People v Felber, 264 App Div 181). There, a corporation having two places of business filed only one sales tax return through the Bronx office, even though separate books were kept for each office. Entries were made in the Manhattan cash disbursement books showing that the tax had been paid. The Bronx office would then receive a check from Manhattan for the tax amount, but would record the check as received for other purposes. The returns filed with the city omitted the taxes collected in Manhattan. The court ruled that the company was in possession as a trustee for the city of funds collected from customers for sales taxes and, when the funds were applied to the company’s own use, the larceny was complete. The court reached its conclusion by stating that it was the law of this State that the fraudulent conversion by a vendor of city sales taxes collected from purchasers was a larceny. No further analysis was made.
More recently the County Court of Nassau County denied a similar motion without consideration of the issues (People v Levin, Nov. 19, 1980). Also, in an unreported opinion, the Supreme Court of Suffolk County held that failure to pay payroll withholding taxes, sales taxes, and franchise taxes did not constitute a larceny (People v Lyon, Oct. 20, 1980). This court disagrees with the holding in Lyon that (1) the State was not the owner of the taxes but only a preferred creditor; and (2) that the provisions of section 1132 of the Tax Law lacked the usually recognizable features of a trust since there was no bar against commingling and since the obligation to pay taxes was *94 imposed by statute and not voluntarily assumed. As indicated previously, a trust may be created by operation of law. The no-commingling rule is often a statutory requirement and may be strong evidence of a trust, but it is not an essential element of a trust (61 NY Jur, Trusts, § 195). Nor does it necessarily mean that if a trustee commingles trust funds he is guilty of larceny. For example, if a trustee commingles trust funds in violation of a statute with his own funds, but still pays out trust funds as required and does not appropriate them to his own use, he could hardly be charged with larceny, although he might properly be charged with violating his fiduciary or statutory duty.
Other jurisdictions ruling on this issue have ruled that a vendor is a trustee (Commonwealth v Shafer, 414 Pa 613; State v Sankey, 68 SD 127; People v Kopman, 358 Ill 479; Anderson v State, 221 Wis 78, supra). All these cases held that statutes which required dealers to collect a specified tax and to file a statement and remit said tax to the State made those dealers agents of the State in collecting the taxes, and conversion of the moneys constituted embezzlement.
Not only is there precedential support for the People’s position, but the case becomes even stronger when compared to two other cases where the Court of Appeals found that no trust sufficient to sustain a larceny conviction had been established.
In People v Yannett (49 NY2d 296, supra), the defendant’s conviction of larceny by embezzlement was reversed since the court found that the defendant was the actual owner of the funds in question and was culpable only of refusing to pay a valid debt. Defendant was the owner and operator of a nursing home which, as a participant in the Federal Medicare program, entered into a provider agreement under which the home agreed that persons eligible for Medicare would be charged a maximum set rate. While waiting for a resident to be approved by Medicare, the home would charge the higher private rate and then, upon being notified of his eligibility, would make refunds to the resident. If, for some reason, the refunds could not be made within 60 days, the home was required to set aside an amount equal to the refund in a separate account until *95 payment would be made. The home would be reimbursed by Medicare when either the refund was paid or set aside. The larceny charges arose because defendant had made only partial and in some cases no refunds to eligible residents. Even though he had not complied with the agreement he was reimbursed by Medicare. In holding that defendant was not guilty of larceny, the court found that the residents held only a contractual right to the money. When the residents initially paid the private rate to defendant, that money became his to use for any purpose he wished. A contractual obligation arose when he was notified of a resident’s Medicare eligibility to refund the entire amount to him. That refund was to be made from defendant’s own money. Nor did the fact that defendant was reimbursed by Medicare make his failure to refund a larceny. Medicare funds were given to reimburse defendant for money he had supposedly already refunded. It was not the source of the refunds due the residents. (The court noted he could be subject to prosecution for theft of Medicare funds from Blue Cross.)
Nor did the duty to segregate the funds create a trust. That duty arose only if and when the nursing home was unable to locate the proper recipient of the refunds. The home’s obligation was to pay a refund to a Medicare resident. Where that party was identifiable, there was no duty to create a special fund, and such an action would in fact have been a violation of the agreement. Defendant could not be held liable for failure to do an impossible act.
In contrast, when a sale is made, a customer receives a receipt wherein the tax is stated and charged separately from the purchase price. Both the vendor and customer know that it is not the vendor who is charging the tax, but the State. The vendor is merely a conduit through which the State obtains taxes. That amount is earmarked specifically for the State. The vendor is not free to do as he wishes with it; he is only holding it temporarily. In Yannett (49 NY2d 296, supra) the nursing home operator took the money as his. Any obligations regarding the money arose only if the residents were later declared eligible for Medicare. If no eligibility was declared, the operator could keep *96 the money forever. A vendor is never allowed to keep a sales tax. It must be reported and remitted.
In People v Keeffe (50 NY2d 149), the court also reversed a larceny conviction on the ground that the complainant had only a contractual right to recover a fee and not an interest in a trust fund.
The issue in that case was whether an attorney who held in a special account the proceeds of a personal injury action settlement was guilty of larceny when his withdrawals from the special account reduced its balance to less than the amount to which his predecessor attorney had been entitled as his share of the fee.
The court held that the predecessor attorney did not have “property” in or ownership of the money as those terms were defined by section 155.00 of the Penal Law.
An intermediate order had been made by the court when the action was tentatively settled, providing in part that “the administrator be permitted to withdraw and pay out the amount of $2,500 to Alfred L. DTsernia, Esq., representing the fee to which he is entitled as former attorney for the petitioner, and that said amount shall be charged against the balance of counsel fees due to the attorneys for the estate.”
After this order but before a final decree, the account containing the proceeds of the tentative settlement was depleted.
The court found that this order did not expressly allow the attorney a retaining or charging lien, which would have been necessary to give an attorney more than a contract claim against a client. Nor was any time for payment specified. “Many reasons can be articulated for not escalating the failure to meet a contractual obligation into a criminal offense. Not the least of these is the question of when payment is due under an order such as that of the Surrogate’s Court in this case which authorized but did not direct payment and included no specific provision with respect to the time of payment.” (People v Keeffe, 50 NY2d 149, 159, supra.) By contrast, the Tax Law is extremely *97 detailed as to the time of payment and the manner of payment. The vendor is authorized to collect taxes and is specifically directed to remit those taxes at the specifically designated time periods.
Subdivision (a) of section 1132 of the Tax Law does create a trust of sales tax moneys. This holding is based upon firm principles of statutory construction. Intent is to be determined from words and language used, construed according to its natural and most obvious sense (McKinney’s Cons Laws of NY, Book 1, Statutes, § 94). Words are to be given their usual and commonly understood meaning (McKinney’s Cons Laws of NY, Book 1, Statutes, § 232). A statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together (McKinney’s Cons Laws of NY, Book 1, Statutes, § 97).
All the essential elements of a trust are present. A trustee is one in whom a trust or confidence is imposed whether by voluntary agreement or by statute and by whom it is accepted (People v Epstein, 245 NY 234, supra; People ex rel. Belleci v Klinger, 164 Misc 530, supra). The duty to collect and remit sales taxes is imposed upon a vendor by the Tax Law. He accepts that duty automatically by establishing and operating a legitimate business (Tax Law, § 1134). The vendor is directed to collect a specified tax and to remit payment at a specified time. He is not free to use it for his own purposes. It belongs to the State as the beneficiary. The tax money is clearly identifiable. The amount of the tax is specified in the law and must be charged and stated separately on a sales receipt. It is earmarked for the State, not the vendor, who is merely a conduit.
Furthermore, in Matter of Ames Volkswagen v State Tax Comm. (47 NY2d 345), the Court of Appeals affirmed the holding of the Appellate Division (58 AD2d 454) that the State could constitutionally require prepayment of certain estimated sales taxes. The court took note of the (p 351) “trustee relationship with which appellants have no quarrel” and cited with approval Matter of Grant Co. v Joseph (2 NY2d 196, 203), where the court stated that “there is no doubt that the sales tax law imposes upon the vendor the *98 obligation of a taxpayer in addition to that of a collecting trustee.” (Emphasis added.)
Where a vendor fraudulently converts sales tax moneys to his own use and fails to remit payment to the State, he is guilty of larceny under the Penal Law.[2]
The defendants’ motion to dismiss the larceny counts is, accordingly, denied.[3]
UNTIMELY FILING
Sales tax returns for the period from June 1, 1978 to July 1, 1979 were not filed until September 28,1979, after an investigation had begun but before indictment. Defendants acknowledge the late filing but contend that subdivision (b) of section 1145 of the Tax Law punishes complete failure to file a return, not late filing, and those counts should be dismissed.
Subdivision (a) of section 1145 provides for civil penalties where a person fails to file a return or pay over any tax within the time required by law. By comparison, subdivision (b) of section 1145 states only “[a]ny person failing to file a return *** required by this article *** shall * * * be guilty of a misdemeanor”. The absence of the phrase “within the time required” is interesting.
Legislatures are not without flaws, and the legislative process may at times produce imperfect statutes. It is the court’s function to breathe life into the law and give effect to legislative intent. A statute must receive a “fair and reasonable construction so as to carry into effect the intention of the lawmakers as it appears from the language *99 used” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 272, p 441; People v Ahearn, 196 NY 221).
It would be illogical to assume that the Legislature intended to allow a person who failed to file a return the privilege of biding his time and waiting until law enforcement officials caught up with him before he complies with the law. The Tax Law is an intricate and detailed structure with strict requirements regarding the time and manner of payment. To accept defendants’ view would weaken that very structure and hinder enforcement of the law.
Defendants also argue that late filing negates any willful failure to file a return and pay sales taxes. Willful failure is not an element to be proved for a violation of subdivision (b) of section 1145 of the Tax Law. With regard to larceny charges, fraudulent intent is an element, but it is an issue for the jury to decide.
The defendants’ motion to dismiss on these grounds is denied.
However, defendants’ motion to strike the language in the indictments charging failure to pay over sales taxes as a violation of subdivision (b) of section 1145 as surplusage is granted. That section punishes failure to file a return; the Penal Law larceny statute covers the charge of failure to pay.
[Portions of opinion omitted for purposes of publication.]

. Defendants are persons required by law to collect sales taxes from their customers (Tax Law, § 1105).

. A question arises as to the effective time of the crime. “Where the offense consists in the appropriation by an agent, a bailee, a trustee, or an attorney, of the property of the owner, the felonious intent need only exist at the time of the appropriation; for, in such a case, the property stolen would have been properly in the possession of the defendant.” (People v Meadows, 199 NY 1, 6.) Here, the tax moneys were properly in defendant’s possession at the time of the collection of the taxes. Failure to file a return and pay over the taxes at the statutorily mandated time with the intent to deprive the State of the money constitutes a misappropriation. The date of the offense, then, would be the date the tax is payable, i.e., the filing date (Tax Law, § 1137, subd [a]). This interpretation, however, would not obviate the requirement that the People prove intent to defraud.

. In view of the complex nature of the issues and despite the upholding of the indictment herein, it would be appropriate for the Legislature to clarify these issues by recodifying the statute.